711 So.2d 995 (1998)
SEVIER INSURANCE AGENCY, INC., et al.
v.
WILLIS CORROON CORPORATION OF BIRMINGHAM.
WILLIS CORROON CORPORATION OF BIRMINGHAM
v.
TURNER INSURANCE AND BONDING COMPANY, INC., et al.
1941634, 1941688.
Supreme Court of Alabama.
February 13, 1998.
Rehearing Denied March 20, 1998.
*996 Thomas T. Gallion III and Susan E. Kennedy of Haskell, Slaughter, Young, Johnston & Gallion, Montgomery, for Dale A. Taylor, Walker Frank Dean, and Sevier Ins. Agency, Inc., et al. (on original submission).
Lee H. Zell and Will Hill Tankersley, Jr., of Balch & Bingham, Birmingham; Susan S. Wagner of Berkowitz, Lefkovits, Isom & Kushner, Birmingham; and Charles B. Paterson of Robison & Belser, Montgomery, for Willis Corroon Corp. of Birmingham (on original submission).
Thomas T. Gallion III and Susan E. Kennedy of Haskell, Slaughter, Young & Gallion, L.L.C., Montgomery, for Dale A. Taylor, Sevier Insurance Agency, Inc., et al., and Walker Frank Dean (on application for rehearing).
Joseph B. Mays, Jr., and Rusha C. Smith of Bradley, Arant, Rose & White, L.L.P., Birmingham; and Charles B. Paterson of Robison & Belser, Montgomery (in case no. 1941688), for Willis Corroon Corp. of Birmingham (on application for rehearing).
James E. Williams of Melton, Espy, Williams & Hayes, P.C., Montgomery, for Turner Ins. & Bonding Co., Inc. (on original submission and on application for rehearing).

On Applications for Rehearing
PER CURIAM.
The opinion of January 17, 1997, is withdrawn, and the following opinion is substituted therefor.
These appeals involve separate cases brought by Willis Corroon Corporation of Birmingham ("Corroon") to enforce identical contractual provisions in employment contracts signed by Dale Taylor and Frank Dean, both of whom had previously worked for Collier Cobb & Associates, Inc. ("CCA"), as commercial insurance brokers. Their employment contracts with CCA included noncompetition agreements that give rise to one of the major issues in this case.
CCA merged with and/or was taken over by Corroon; subsequently, both Taylor and Dean were terminated by Corroon, and they *997 went to work for other insurance corporations. Taylor joined Sevier Insurance Agency, Inc. ("Sevier Insurance"), and Dean joined Turner Insurance and Bonding Company ("Turner Insurance").
Corroon, as the corporate successor to CCA, filed two actions. The first action was filed against Taylor and Sevier Insurance, Taylor's new employer, and was filed in Jefferson County. Corroon filed the second action against Dean and Turner Insurance, Dean's new employer, in Montgomery County. In both actions, Corroon alleged that the defendants had unlawfully interfered with Corroon's contractual and business relations, were guilty of a breach of contract, and that they violated the provisions of Ala.Code 1975, § 8-27-3, the "Alabama Trade Secrets Act." In the Jefferson County action, Taylor and Sevier Insurance both answered and, by counterclaim, alleged that Corroon had intentionally interfered with their business relations and had committed fraud. In the Montgomery County case, Turner Insurance answered and counterclaimed, alleging intentional interference with business relations; in addition, Dean answered and, in a counterclaim, alleged that Corroon had committed fraud against him and had intentionally interfered with his business relations.
In the Taylor Insurance action, our case number 1941634, the Jefferson County trial judge held that the contractual agreement was a "nonsolicitation provision" and, therefore, was valid and enforceable. The court, accordingly, granted declaratory relief in favor of Corroon, which in effect prohibited Taylor from violating the competition restrictions contained in the agreement. The trial court reserved its rulings on Taylor Insurance and Sevier's counterclaims alleging fraud and intentional interference with business relations, on the ground that those claims contained disputed issues of fact that should be submitted to a jury. The court made the declaratory relief final, pursuant to Rule 54(b), Ala. R. Civ. P. Taylor appealed. The issue in that case is whether the trial court properly entered the summary judgment in favor of Corroon.
In Dean's case, our case number 1941688, the Montgomery County trial judge granted Dean and Turner Insurance's motion for a summary judgment against Corroon's claims, holding that the contractual agreement was an invalid "covenant not to compete" and not a "nonsolicitation agreement." Consequently, the trial judge submitted the case to a jury on Turner Insurance's counterclaim alleging intentional interference with business relations and on Dean's counterclaim alleging fraud and intentional interference with business relations. The jury awarded Dean $600,000 on his counterclaim and awarded Turner Insurance $1,175,000 on its claim. The trial court entered a judgment on that verdict. Corroon appealed.
As is apparent from these facts, the Jefferson County Circuit Court and the Montgomery County Circuit Court reached different conclusions on the enforceability and the legal effect of the contractual agreement that Dean and Taylor had executed with CCA, which later merged with Corroon.
These appeals present three issues: 1) whether the contractual agreements between CCA and its former employees, Taylor and Dean, are enforceable under § 8-1-1, Ala. Code 1975; 2) whether Corroon, as a corporate successor to CCA, the corporation with which Dean and Taylor made the agreement, can enforce the agreement; and 3) whether there was sufficient evidence to submit Turner Insurance's intentional-interference-with-business-relations claim and Dean's intentional-interference-with-business-relations claim and his fraud claim to the jury.

I.
Were the employment agreements executed by Dean and Taylor enforceable under § 8-1-1? To answer that question, we must examine the agreements and determine their nature and legal effect.
Before beginning their employment with CCA, Taylor and Dean signed identical agreements, which provided in pertinent part as follows:
"WHEREAS, employee is desirous of entering into employment with the company in accordance with the terms and conditions as set forth below including a covenant not to compete and promise to keep certain information gained during employment *998 confidential upon termination of this Agreement.
"....
"3. Accounts of the Company. Employee expressly covenants and agrees that any and all business and accounts at any time or times procured by the Employee while employed hereunder are and shall be the permanent and exclusive property of the Company and for its exclusive benefit....
"4. Disclosure of Information; Solicitation of Accounts. Employee recognizes and acknowledges that the lists and names of the Company's policyholders and accounts are a valuable and unique asset of the Company and a trade secret belonging to it. In consideration of his employment and the payment of salary, the undersigned Employee agrees to the following:
"(a) Upon termination of employment hereunder for any reason whatsoever, Employee will not, for a period of two years from the date of termination of this Agreement ... directly or indirectly, either as an individual or as the agent, representative, stockholder, or employee of another or in any other manner: (1) Quote rates to, accept or receive insurance from, or write, bind, or broker insurance, or provide any insurance counselling services, advice or other insurance related services similar to those then provided by the company for any person, firm or corporation that is a policyholder or a client of the company, or otherwise directly or indirectly suggest, advise or attempt to persuade any of the company's policyholders or clients to discontinue any policy of insurance with the company, or to cancel, replace or not renew such policies; and (2) Divulge the names, addresses or other information concerning the policyholders, clients and accounts of the corporation or any other confidential information acquired during employment by the company to any person, firm, corporation, association, or other entity for any purpose whatsoever."
Taylor record 9-12; Dean record 26-29.
Taylor and Dean contend that this agreement is a "covenant not to compete," while Corroon contends that the agreement is a "nonsolicitation agreement."
The agreement itself states that it is a "covenant not to compete," but its restrictions match those of a nonsolicitation agreement. Our examination of this Court's cases discussing the distinction between the two shows that this Court has held that a "nonsolicitation agreement" was not covered by § 8-1-1 (see, e.g., Hoppe v. Preferred Risk Mut. Ins. Co., 470 So.2d 1161 (Ala.1985)), but that, on other occasions, this Court has held that such an agreement was covered by § 8-1-1 (see, e.g., James S. Kemper & Co. Southeast, Inc. v. Cox & Associates, Inc., 434 So.2d 1380 (Ala.1983)).
In this opinion, we hope today to clarify the application of § 8-1-1. Based on our interpretation of § 8-1-1 in this case, there will no longer be a need to classify employee agreements like those in this case either as covenants not to compete or as nonsolicitation agreements.
We hold that a nonsolicitation agreement restrains trade and, therefore, that § 8-1-1 applies to such an agreement and that a person may enforce such an agreement only if it falls within the exceptions stated in § 8-1-1(b).
An analysis of the statute and the relevant precedents shows that the classification of an agreement either as a covenant not to compete or as a nonsolicitation agreement is not determinative of the question whether the particular agreement is valid or invalid under the provisions of § 8-1-1.
Section 8-1-1(a) explicitly prohibits agreements that restrict a person's ability to engage in a profession, trade, or business:
"(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise *999 than is provided by this section is to that extent void.
Section 8-1-1(b) provides exceptions:
"(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein."
(Emphasis added.) Section (b) clearly addresses the situation involved in this case. Dean and Taylor were prohibited by the agreement from soliciting customers of their former employer. Section 8-1-1(b) allows an employee to enter into such an agreement with his or her employer. Thus, an agreement with a former employer prohibiting an employee from soliciting customers of the former employer is enforceable as an exception to the general prohibition of § 8-1-1(a).
In the past, this Court, in determining whether agreements were valid under the provisions of § 8-1-1 and its statutory predecessors, has classified those agreements either as contracts in general restraint of trade, which are void, or as contracts in partial restraint of trade, which are always upheld, when properly restricted as to territory, time, and persons and supported by sufficient consideration. In Famex, Inc. v. Century Ins. Services, Inc., 425 So.2d 1053, 1054-55 (Ala.1982), the Court, quoting Hibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027, 1029 (Ala.1980), which in turn had quoted from Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889 (1916), stated:
"`"It is true that contracts in general restraint of trade violate the policy of the law and are therefore void, but as observed in Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889:
"`"`... Every contract, however, which at all restrains or restricts trade, is not void; it must injuriously affect the public weal; that it may affect a few or several individuals engaged in a like business does not render it void. Every contract of purchase and sale to some extent injures other parties; that is, it necessarily prevents others from making the sale or sales consummated by such contract....
"`"`Contracts in partial restraint of trade are always upheld, when properly restricted as to territory, time, and persons, where they are supported by sufficient consideration.' ..."'"
Although there is some language in some of this Court's cases, such as Corson v. Universal Door Systems, Inc., 596 So.2d 565 (Ala.1991), indicating that § 8-1-1 does not apply to an agreement that is only a "partial restraint of trade," a full reading of those cases shows that the agreements under consideration were agreements that could be upheld, even though they were in partial restraint of trade, because they were properly restricted as to territory, time, and persons and were supported by sufficient consideration; that is, they came within the provisions of the exception contained in § 8-1-1 (b) or its statutory predecessor. By this opinion, we hold that a "partial restraint of trade" is subject to § 8-1-1, but will be upheld when it is properly restricted as to territory, time, and persons and where it is supported by sufficient consideration.
Without its "otherwise than is provided" clause, § 8-1-1(a) would be an uncompromising provision of law that would make "[e]very contract [in restraint of trade] ... void," whether it was a general restraint or a partial restraint.
In reaching the conclusion that we do, we have examined the history of § 8-1-1, and we conclude that the Legislature, by adopting § 8-1-1, intended to deal with all types of restraints of trade, both reasonable and unreasonable, and both partial and total.
The predecessor of § 8-1-1 provided only two exceptions to the prohibition against restraints of trade. The predecessor statutes in the Alabama Code of 1923 provided:
"6826. Contract in restraint of trade, void.Every contract by which any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise *1000 than is provided by the next two sections, is to that extent void.
"6827. Exception in favor of sale of goodwill.One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein.
"6828. Exceptions in favor of partnership arrangements.Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same county, city or town where the partnership business has been transacted, or within a specified part thereof."
In 1931, the Legislature added the exception for nonsolicitation agreements between employers and employees. That year, it amended Code 1923 § 6827, to read as follows, adding the language emphasized here:
"One who sells the good will of a business may agree with the buyer, and one who is employed as an agent, servant, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him, and so long as such employer carries on a like business therein."
Act No. 546, Ala. Acts 1931. See Ala.Code of 1940, Title 9, § 23 (emphasis added). Therefore, in 1931, the Legislature added an exception for the very kind of nonsolicitation agreement/partial restraint of trade that Corroon claims should not even be covered by § 8-1-1, the successor to §§ 6826-6828 of the 1923 Code and to Title 9, §§ 22-24, of the Code of 1940. It would make no sense for the Legislature to draft an exception in its statute prohibiting restraints of trade for nonsolicitation agreements but not intend for either the statute or the exception to apply to nonsolicitation agreements.

II.
We next consider whether a successor corporation can enforce an employee's nonsolicitation agreements.
Taylor and Dean entered into the agreements with the predecessor employer, CCA, and not with Corroon, the successor corporation. The question whether Corroon can enforce the agreements Taylor and Dean made requires us to interpret provisions of State law relating to nonsolicitation agreements. Section 10-2A-145(b)(4), Ala.Code 1975 (which was in effect when CCA merged with Corroon),[1] provided:
"[The] surviving ... corporation shall... possess all the rights [and] privileges... of each of the merging or consolidating corporations; ... and all ... choses in action ... shall be taken and deemed to be transferred to and vested in [the surviving] corporation without further act or deed...."
In Wyatt Safety Supply Co. v. Industrial Safety Products, Inc., 566 So.2d 728 (Ala. 1990), a majority of this Court held that a successor corporation may not enforce an employment agreement made between an employee and the predecessor corporation. In reaching this decision, the Court concluded that § 10-2A-145(b)(4) did not apply to nonsolicitation agreements entered into by predecessor corporations, because of the policy disfavoring restraints on trade expressed in § 8-1-1.
We have reexamined the rule of law established by the majority of this Court in Wyatt, and, after further consideration of the legislative intent currently expressed in § 10-2B-11.06 (see footnote 1), we overrule the holding in Wyatt and hold that a successor corporation can enforce nonsolicitation agreements that are otherwise valid and enforceable. Cf. First Alabama Bancshares, Inc. v. McGahey, 355 So.2d 681 (Ala.1977) (recognizing, under somewhat different facts, that a noncompetition agreement can remain valid after a merger and can be enforced by the successor corporation). To hold otherwise would, we believe, ignore the reality *1001 that such agreements are often important assets that businesses intend to transfer during a purchase or merger; therefore, we hold that the exception contained in § 8-1-1(b) permits a successor corporation to enforce a nonsolicitation agreement entered into between an employee and a predecessor corporation.
Having overruled the principle of law stated in Wyatt, we must now consider how this new rule should be applied. See Prospective Application of Judicial Decisions, 33 Ala. L.Rev. 463, 468 (1982) (explaining that once a case has been overruled, a court may apply the new rule in several ways). As we view it, the determination of how to apply the new rule is a matter of judicial discretion that must be exercised on a case-by-case basis. Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala.1997). Given the facts of this case, we elect to apply the new rule prospectively. Consequently, we hold that Corroon, as a successor corporation, is not entitled to enforce the agreements at issue.

III.
Given our holding that Corroon cannot enforce the agreements at issue, we now discuss the judgments entered in these two cases, especially as they relate to the counterclaims alleging intentional interference with business relations and Dean's counterclaim alleging fraud.
The Montgomery County Circuit Court granted Dean and Turner Insurance's motion for a summary judgment against Corroon's claims, holding that the contract was unenforceable, and it submitted to the jury Dean and Turner Insurance's counterclaims alleging intentional interference with business relations and Dean's counterclaim alleging fraud. Turner Insurance had made no fraud counterclaim. The jury found that Corroon had intentionally interfered with Dean and Turner Insurance's business relations and that Corroon had committed a fraud against Dean. As explained above, Corroon, pursuant to the rule in Wyatt, may not enforce the nonsolicitation agreement; therefore, we affirm the summary judgment for Dean and Turner Insurance on that issue. We also agree that the jury could have found that Corroon had intentionally interfered with Dean and Turner Insurance's business relations. However, we conclude that the evidence did not support the jury's verdict on the fraud claim; therefore, Dean's fraud counterclaim should not have gone to the jury.
The Jefferson County Circuit Court held that Corroon could enforce the nonsolicitation agreements. As explained in Part II above, we reverse that holding. Because the trial court did not submit Taylor and Sevier Insurance's counterclaims to the jury, those counterclaims are not before this Court. On remand, the trial court is directed to conduct proceedings in accordance with this opinion.
Dean and Turner, in the Montgomery County case, counterclaimed for damages based on an alleged interference by Corroon with their business relations. This Court has recognized the common law tort of intentional interference with business relations. It requires a showing of:
"(1) The existence of a contract or business relation;
"(2) Defendant's knowledge of the contract or business relation;
"(3) Intentional interference by the defendant with the contract or business relation;
"(4) Absence of justification for the defendant's interference; and
"(5) Damage to the plaintiff as a result of defendant's interference."
Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590, 597 (Ala.1986) (footnote omitted); see also Soap Co. v. Ecolab, Inc., 646 So.2d 1366 (Ala.1994).
In the Montgomery County case, the attorneys for Corroon sent a letter to Dean (with a copy to Dean's new employer, Turner Insurance), accusing Dean of violating the restrictions in his contract with Corroon. Although mere attempts to enforce a contractual agreement do not amount to intentional interference with business relations, Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 508 (Ala.1991), other actions by Corroon support allowing Dean and Turner *1002 Insurance's claims of intentional interference with business relations to go to the jury. Lane Milam, an employee of Corroon, notified United States Fidelity and Guaranty Company and Boan Contracting Company, companies with whom Dean and Turner were attempting to do business, that Dean had a noncompetition agreement with Corroon and that Dean was possibly violating that agreement. Evidence that Corroon knew of Dean's relationship with those companies, evidence that a Corroon employee personally contacted those companies, and evidence that the contact resulted in damage to Dean constituted sufficient evidence to submit the intentional-interference claim to the jury. The fourth element of a claim of intentional interference with business relations (see Gross, supra), the absence of justification, is really an affirmative defense. Whether Corroon was justified in its actions to enforce the nonsolicitation agreement against Dean was a question for the jury to decide. Gross, 494 So.2d at 597, n. 3.
We now discuss Dean's fraud claim. Dean alleged that Corroon had committed a fraud against him. Dean based his fraud claim on statements he alleged were made to him during his employment with Corroon. Dean claimed that Corroon employees misrepresented to him that Corroon desired to further Dean's business and that it would assist him in finding clients; that Corroon would conduct its business in a professional and ethical manner; and that the sales quotas Corroon gave Dean were reasonable and were for their mutual benefit. Turner Insurance made no fraud claim.
"The elements of a fraud claim are: (1) a misrepresentation of a material fact; (2) made willfully to deceive or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence. Ala. Code 1975, § 6-5-101; Ramsay Health Care, Inc. v. Follmer, 560 So.2d 746, 749 (Ala.1990)."[2]
McGarry v. Flournoy, 624 So.2d 1359 (Ala. 1993).
Dean specifically claimed that Corroon had acted fraudulently toward him while he was employed by Corroon, by intentionally establishing unreasonable quotas for him, knowing that he would be unable to meet them. Dean contends that Corroon then fired him because he was not meeting his quotas. According to Dean, Corroon did this so it could reap the benefits of Dean's efforts by keeping Dean's customers, through enforcement of the noncompetition agreement, without having to continue to employ Dean. Corroon, however, argues that it had had no "present intent" to defraud Dean. Corroon also argues that, regardless of its motive, it could have terminated Dean at any time because he was an at-will employee. Therefore, Corroon argues that the evidence was not sufficient to support the fraud claim.
We agree with Corroon on the fraud issue. "It is well settled that a contract of employment-at-will may be terminated by either party with or without cause or justification...." Campisi v. Scoles Cadillac, Inc., 611 So.2d 296, 298 (Ala.1992). The at-will nature of the employment gave Corroon the authority to discharge Dean as it did here. To affirm on the fraud issue would effectively eliminate the discretion employers enjoy to employ whom they will. We conclude that Corroon did not act fraudulently in its treatment of Dean during his employment with Corroon.
The jury returned a general verdict on Dean's claim alleging fraud and his claim alleging intentional interference with business relations. As explained above, we find sufficient evidence to support the intentional-interference claim, but do not find sufficient evidence to support the fraud claim. In Aspinwall v. Gowens, 405 So.2d 134, 138 (Ala. 1981), this Court stated (on application for rehearing):
"[I]f a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or *1003 more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count."
See also, Green Tree Acceptance, Inc. v. Tunstall, 645 So.2d 1384 (Ala.1994); and St. Clair Federal Savings Bank v. Rozelle, 653 So.2d 986 (Ala.1995).
Corroon moved for a directed verdict, specifically arguing that the fraud count was not supported by the evidence and detailing with specificity the grounds upon which the directed verdict motion should be granted as to the fraud count. Accordingly, this Court will not presume that the general verdict in favor of Dean was returned on the claim alleging intentional interference with business relations. Green Tree Acceptance, 645 So.2d at 1387, citing Old Southern Life Ins. Co. v. Spann, 472 So.2d 987 (Ala.1985). Therefore, we must reverse the judgment in Dean's case and remand for a new trial on Dean's counterclaim alleging intentional interference with business relations.

IV. Summary
We conclude that agreements like the nonsolicitation agreements at issue in these cases can be enforceable as covenants not to compete, because they fall within the exception stated in § 8-1-1(b). However, under the old rule established in Wyatt, Corroon may not enforce the agreements in these cases, because Corroon is a successor corporation, but we today overrule Wyatt; in the future, the Wyatt rule will not apply, and a corporation in Corroon's situation will be able to enforce an otherwise enforceable agreement falling with the provisions of the § 8-1-1(b) exception.
In case number 1941634, involving Taylor and Sevier Insurance, the summary judgment is reversed, and the trial court is directed to consider the counterclaims filed by Taylor and Sevier Insurance.
In case number 1941688, involving Dean and Turner Insurance, that portion of the judgment holding the agreement unenforceable is affirmed. That portion based on the verdict awarding damages on Turner Insurance's claim alleging intentional interference with business relations is also affirmed. That portion awarding damages to Dean is reversed. The evidence was not sufficient to support Dean's fraud claims; therefore, Corroon was entitled to a directed verdict on those claims. On remand, the trial court is directed to hold a new trial on Dean's claim alleging intentional interference with business relations.
APPLICATIONS GRANTED; OPINION OF JANUARY 17, 1997, WITHDRAWN; OPINION SUBSTITUTED; 1941634REVERSED AND REMANDED; 1941688 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and SHORES, HOUSTON, and BUTTS, JJ., concur.
COOK, J., concurs in the result.
MADDOX and SEE, JJ., dissent in case no. 1941634 and concur in part and dissent in part in case no. 1941688.
MADDOX, Justice (concurring in part and dissenting in part).
I concur with the plurality's holding that agreements such as the ones in this case will generally be enforceable under § 8-1-1(b), Ala.Code 1975. I also concur with the plurality's holding that there was not sufficient evidence to support a finding that Corroon had acted fraudulently toward Dean, but I dissent from the holding that affirms Turner Insurance's award of damages on its claim alleging intentional interference with business relations and that allows other defendants to pursue such claims. I concur wholeheartedly with the overruling of Wyatt Safety Supply Co. v. Industrial Safety Products, Inc., 566 So.2d 728 (Ala.1990), a decision that I dissented from when it was released. However, I disagree with the plurality's decision to apply that overruling prospectively only, and I write to explain why I believe the new rule adopted today should be applied to the parties *1004 involved in this case. Because I believe Corroon was entitled to enforce its nonsolicitation agreements, I would hold that Corroon was entitled to a summary judgment on the defendants' counterclaims alleging intentional interference with business relations.
When a court determines that a prior rule of law should be overruled, as the plurality has done in this case, the court must consider how the new rule should be appliedretroactively, prospectively, or what has been classified as quasi-prospectively. See Prospective Application of Judicial Decisions, 33 Ala. L.Rev. 463, 468 (1982) (explaining that once a case has been overruled, a court may apply the new rule in several ways). The plurality points out that the determination of how to apply the new rule is a matter of judicial discretion, which must be exercised on a case-by-case basis,[3] but today's case is analogous to other cases in which a decision interpreting a statute was overruled and in which this Court allowed the successful parties to reap the benefits of their efforts.
In Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972), for example, this Court overruled Bernhard v. Bernhard, 278 Ala. 240, 177 So.2d 565 (1965), which had interpreted a state statute relating to joint tenancies in real estate with rights of survivorship. In Nunn v. Keith, although this Court did not address whether the decision should be applied retroactively or prospectively, it is apparent that the Court afforded relief to the parties before the Court who had challenged the correctness of the Bernhard rule.
Three years later, in Clements v. Wheeler, 294 Ala. 187, 314 So.2d 64 (1975), this Court applied the rule adopted in Nunn v. Keith against a party who had executed a real property deed after the date Bernhard was released, but before Nunn v. Keith was decided. Again, the Court did not specifically address the issue of the prospective or retroactive application of the Nunn v. Keith decision.
It was later that the Court, in Jackson v. Fillmore, 367 So.2d 948 (Ala.1979), discussed the question whether Nunn v. Keith should apply when a party had relied upon the decision in Bernhard and had shown such reliance. In Jackson, a majority of this Court applied the new rule prospectively only, as the plurality does today, because one of the litigants had actually relied on the rule of law established in Bernhard in drafting the property conveyance that was at issue in that case.
Finally, in Bringhurst v. Hardin, 387 So.2d 186 (Ala.1980), this Court concluded that Nunn v. Keith was to be applied retroactively in the absence of a finding that a party to the dispute had relied on the prior rule of law.
As the cases described above indicate, reliance on the prior rule of law is an important variable a court must consider when determining whether to apply a new rule prospectively only; this is particularly true in cases interpreting state statutes. Cf. Hosea O. Weaver & Sons, Inc. v. Towner, 663 So.2d 892, 899 (Ala.1995).
Based on the above, I believe the principle of law this Court adopts today should be applied so as to afford relief to Corroon and to future litigants who might challenge existing rules of law and convince this Court to change them. Towner, 663 So.2d 892, 899.[4] Therefore, I respectfully disagree with the plurality's decision to overrule Wyatt prospectively only.
Because I conclude that Corroon's actions in this case were related to the enforcement of what I would hold to be valid agreements, I must also respectfully dissent from the plurality's conclusion that the defendants produced substantial evidence that Corroon should be held liable for intentionally interfering with their business relations. Mere attempts to enforce valid nonsolicitation agreements do not constitute tortious conduct. See Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 508 (Ala.1991).
*1005 I dissent in case number 1941634. In case number 1941688, I concur with the plurality's holding that Dean did not present substantial evidence that Corroon had acted fraudulently, but I dissent from the holding that Corroon is not entitled to enforce the agreement at issue and the holding that Dean and Turner Insurance presented substantial evidence that Corroon had intentionally interfered with their business relations.
SEE, J., concurs.
NOTES
[1] Section 10-2A-145(b)(4) was repealed effective January 1, 1995, and was replaced by § 10-2B-11.06, which carries forward the substance of subsection (b)(4) but in an abbreviated form.
[2] The change of the standard for fraud from "justifiable reliance" to "reasonable reliance" in March 1997 does not apply retroactively. Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Thus, the justifiable reliance standard applies to the fraud claims in this case.
[3] Professional Insurance Corp. v. Sutherland, 700 So.2d 347, 352 (Ala.1997).
[4] If a party could show, as was done in Jackson, supra, actual reliance on the rule of law that is being overruled, there is current authority for not applying the new rule to that party; however, the trial courts have made no findings of such reliance in the two cases now before us.