823 So.2d 659 (2001)
PITNEY BOWES, INC.
v.
BERNEY OFFICE SOLUTIONS.
1000178.
Supreme Court of Alabama.
December 21, 2001.
*660 Steadman S. Shealy, Jr., and Richard E. Crum of Cobb, Shealy & Crum, P.A., Dothan, for appellant.
Peter S. Fruin of Maynard, Cooper & Gale, P.C., Montgomery, for appellee Berney Office Solutions.
E. Terry Brown, Mark N. Chambless, and Daniel L. Feinstein of Chambless, Math, Moore, Brown & Carr, P.C., Montgomery, for appellee Thomas W. Morris.
JOHNSTONE, Justice.
Pitney Bowes, Inc. ("Pitney"), appeals the summary judgment entered by the trial court in favor of Berney Office Solutions ("Berney"). Because of the continued pendency of other claims between and among these parties and others, the trial court made the summary judgment final and appealable pursuant to Rule 54(b), Ala. R. Civ. P. We affirm.
In the Montgomery County Circuit Court, Thomas W. Morris sued his former employer Pitney for an injunction against the enforcement of a noncompete agreement he had executed before he began his employment with Pitney and for a declaratory judgment that the agreement was void. Pitney counterclaimed to enforce the agreement. Pitney also filed a third-party complaint against Morris's employer Berney and its parent corporation Global Imaging Systems, Inc., to enforce the same noncompete agreement. Berney then moved to dismiss, or in the alternative, for a summary judgment, on the claim by Pitney for enforcement of the noncompete agreement. Berney asserted that § 8-1-1(a), Ala.Code 1975, voided the noncompete agreement because, it said, the agreement did not meet the requirements of § 8-1-1(b), Ala.Code 1975, for an exception to the general rule of § 8-1-1(a) that every contract restraining a lawful profession, trade, or business is void.
After a hearing, the trial court entered a summary judgment in favor of Berney and *661 made that judgment final and appealable pursuant to Rule 54(b), Ala. R. Civ. P. On appeal, Pitney asserts as its single issue that the trial court erred in holding the noncompete agreement void.
Morris began working as a salesman for Montgomery Office Equipment, Inc. ("MOE"), in 1991. In 1998, Mike Motley, the owner of MOE, began negotiations to sell his corporation to Pitney.
On November 19, 1998, Pitney required Morris and other MOE employees to sign an agreement entitled "Intellectual Property, Confidential Information and Non-Competition Agreement" as a condition to their retaining their jobs when Pitney consummated its prospective purchase of MOE. The agreement provided, in pertinent part:
"[W]hen my employment with the Company [(Pitney)] ends, I [(Morris)] agree that for a period of one (1) year, I shall not directly, or indirectly through or any business or associate with whom I may be affiliated:
"a) approach, solicit or accept copier or facsimile business from any of the Company's existing customers in the counties in which the Company currently does business or within fifty (50) miles of such counties;
"b) approach, counsel or attempt to induce any person who is then an employee of the Company to leave the employ of the Company to engage in activities which are competitive [to] the Company's business; or
"c) aid or assist any other persona [sic] or corporation to do any of the above."
Pitney paid Morris $7,500 in consideration of his signing the agreement.
Nearly a month later, on December 16, 1998, Motley sold MOE to Pitney. Morris thus became an employee of Pitney at that time. Morris resigned his new employment with Pitney about seven months later, on July 23, 1999. About August 4, 1999, Morris went to work as a commercial sales representative for Berney.
In the ensuing litigation, Pitney claimed that Morris's employment with Berney violated the noncompete agreement. Thus, Pitney sought to enforce the noncompete agreement, and Berney sought to avoid it.
"Summary judgment is appropriate only when `there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Economic & Indus. Dev. Auth., 749 So.2d 425 (Ala.1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996). In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court. Dobbs, supra."
Ex parte Kraatz, 775 So.2d 801, 803 (Ala. 2000).
In Sevier Insurance Agency, Inc. v. Willis Corroon Corp., 711 So.2d 995 (Ala.1998), this Court held "that a nonsolicitation agreement restrains trade and, therefore, that § 8-1-1 applies to such an agreement and that a person may enforce such an agreement only if it falls within the exceptions stated in § 8-1-1(b)." 711 So.2d at 998. "A person or entity seeking to enforce a contract that restrains the exercise of a lawful trade or business has the burden of showing that it is not void under Ala.Code 1975, § 8-1-1." Construction Materials, Inc. v. Kirkpatrick Concrete, Inc., 631 So.2d 1006, 1009 (Ala.1994). Section 8-1-1, Ala.Code 1975, provides, in pertinent part:

*662 "(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.

"(b) ... [O]ne who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the ... employer carries on a like business therein." (Emphasis added.)
"Section 8-1-1 expresses the public policy of Alabama disfavoring contracts in restraint of trade; such contracts are disfavored `because they tend not only to deprive the public of efficient service but also... to impoverish the individual.'" Construction Materials, 631 So.2d at 1009 (quoting Robinson v. Computer Servicenters, Inc., 346 So.2d 940, 943 (Ala.1977)). A covenant not to compete that does not fall within the limited exceptions set out by § 8-1-1(b) is void. Construction Materials, 631 So.2d at 1009. See also Livingston v. Dobbs, 559 So.2d 569 (Ala.1990), and Odess v. Taylor, 282 Ala. 389, 211 So.2d 805 (1968).
Morris signed the noncompete agreement on November 19, 1998. Pitney, which seeks to enforce the noncompete agreement, did not employ Morris until December 16, 1998. The employee-employer exception to the voidness of noncompete agreements does not save a noncompete agreement unless the employee-employer relationship exists at the time the agreement is executed. Construction Materials, supra. Absent the employee-employer relationship when the agreement is executed, the agreement is void. Id. The voidness of the agreement in this case did not disappear when Pitney employed Morris almost a month after the signing. Morris did not re-execute the agreement after Pitney employed him.
Pitney argues that Morris's receiving consideration for the noncompete agreement saves it from the operation of § 8-1-1. This statute, however, presupposes noncompete agreements supported by consideration. The Legislature would not need to adopt a statute to void noncompete agreements that were not supported by consideration, as they would be unenforceable for lack of consideration even without the statute. Section 8-1-1 voids noncompete agreements that would otherwise fulfill all of the requirements (including consideration) for valid contracts. See Sevier Ins. Agency, supra, and Calhoun v. Brendle, Inc., 502 So.2d 689 (Ala.1986).
Finally, the reference in the agreement to "Montgomery Office Equipment, a Pitney Bowes Company" did not supply employer status to Pitney. At the time Morris signed the agreement, MOE was his employer and Pitney was not. Pitney admits the two entities were distinct.
In adopting § 8-1-1, the Legislature has declared the public policy of this state against noncompete agreements. Cherry Bekaert & Holland v. Brown, 582 So.2d 502 (Ala.1991). Berney has "show[n] that there is no genuine issue of material fact and that [Berney] is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. The judgment of the trial court is due to be affirmed.
AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, LYONS, and STUART, JJ., concur.
HARWOOD, J., concurs specially.
BROWN, J., recuses herself.
*663 HARWOOD, Justice (concurring specially).
I concur fully in the main opinion, but write specially to elaborate as follows.
One of the cases relied on by Pitney and cited in the main opinion is Sevier Insurance Agency, Inc. v. Willis Corroon Corp., 711 So.2d 995 (Ala.1998). In Sevier Insurance, the two employees signed a noncompetition agreement with their corporate employer, the validity and enforceability of which was an accepted, and apparently uncontested, premise in the case. That corporate employer "merged with and/or was taken over by [a corporate successor to the original corporate employer]." 711 So.2d at 996. Subsequently, the two employees were terminated by the corporate successor. It then instituted the litigation underlying the two appeals, after the two employees went to work with other companies whose businesses competed with that of the corporate successor. Overruling one of our earlier decisions, this Court held in Sevier Insurance "that a successor corporation can enforce nonsolicitation agreements that are otherwise valid and enforceable." 711 So.2d at 1000. The Court noted that § 10-2A-145(b)(4), Ala. Code 1975 (which was in effect at the time of the merger in that case but which was subsequently repealed and replaced by § 10-2B-11.06), provided as follows with respect to a corporate merger:
"`[The] surviving ... corporation shall ... possess all the rights [and] privileges of each of the merging or consolidating corporations; ... and all... choses in action ... shall be taken and deemed to be transferred to and vested in [the surviving] corporation without further act or deed....'"
711 So.2d at 1000 (bracketed language in Sevier Insurance). The Court expressed the rationale for its holding and expressed its holding as follows:
"To hold otherwise would, we believe, ignore the reality that such agreements are often important assets that businesses intend to transfer during a purchase or merger; therefore, we hold that the exception contained in § 8-1-1(b) permits a successor corporation to enforce a nonsolicitation agreement entered into between and employee and a predecessor corporation."
711 So.2d at 1000-01.
The facts of the present case are distinguishable from those in Sevier Insurance on several accounts. First, although Pitney asserts that "[i]n the process of being hired by MOE Tom Morris signed a noncompete agreement," Morris correctly points out in his brief that Pitney's citation to the record in support of that statement is actually a citation to a brief Pitney submitted to the trial court and that there otherwise "is no testimony, affidavit, or other evidentiary submission whatsoever which would suggest that Morris executed any agreement limiting his ability to practice his chosen profession other than the November 19, 1998, agreement at question herein." Moreover, Pitney acknowledges to this Court that "[this supposed earlier] non-compete agreement is not the subject of this case." (Pitney's brief at 11.) Nowhere in their respective briefs do the parties before us assert that MOE "merged with and/or was taken over by" Pitney, or that Pitney was "the corporate successor" to MOE, as was the situation in Sevier Insurance. Rather, we are simply told variously by the parties in their briefs that the owner of MOE entered into negotiations in the fall of 1998 for the sale of that business to Pitney, which sale was ultimately consummated, with the "result ... that transfer of the business known as Montgomery Office Equipment, Inc., to Pitney Bowes, Inc., finally occurred for accounting purposes *664 on December 16, 1998"; that "[t]hereafter, Montgomery Office Equipment, Inc., was known as Montgomery Office Equipment, Inc., a Pitney Bowes company"; that "[i]n practice the company stayed the same and continued to operate in the exact same line of work[;] however, the name did change to reflect the company's sole ownership by Pitney Bowes, Inc."; that as of December 16, 1998, "MOE ceased to exist"; and that "Pitney operated the business in Montgomery under the name `Montgomery Office Equipment Company, Inc., a Pitney Bowes company.'" We are told that "[o]n December 16, 1998, MOE was sold to Pitney Bowes and began business under the trade name `Montgomery Office Equipment, a Pitney Bowes company.'" The noncompetition agreement at issue recites that it was being entered into between Morris and "Montgomery Office Equipment Company, Inc., a Pitney Bowes company." The legal entity "Montgomery Office Equipment, Inc., a Pitney Bowes company" was not then in existence. Whatever were the legal processes and mechanics whereby MOE was sold to Pitney, none of the parties has asserted that this case fits the Sevier Insurance mold; however, that lack of explanation is understandable given that, as noted above, Pitney states unequivocally that whatever "non-compete agreement" might have existed between MOE and Morris, that "non-compete agreement is not the subject of this case."
Morris signed the agreement with Pitney in November, 1998, and in exchange for his promises received $7,500 immediately and then was employed by Pitney in December 1998. Pitney explains that although the sale of MOE to Pitney was "confirmed" in October 1998, "it was decided that the actual transfer date of the MOE business for accounting purposes would be December 1, 1998"; that transfer date was thereafter twice extended, ultimately to December 16, 1998, when there were delays in finalizing the accounting matters. Pitney tells us that "[i]t was in November 1998, however, that the employees who wished to work for Pitney Bowes [were] required to prepare all of the paperwork necessary to be employed by that company." Accordingly, regardless of the reasons, and regardless of what the anticipations, expectations, and intent of the parties might have been, Morris was not an employee of Pitney or of "Montgomery Office Equipment, Inc., a Pitney Bowes company" at the time he signed the noncompetition agreement on November 19, 1998.
Section 8-1-1 states generally that "[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void." Subsection (b) allows for certain exceptions, and the one relied on by Pitney is that "one who is employed as an agent, servant or employee may agree with his employer" to refrain from certain competitive activities. "The burden is upon the person or entity seeking to enforce a contract which restrains a lawful trade or business to show that it is not void under § 8-1-1." Calhoun v. Brendle, Inc., 502 So.2d 689, 693 (Ala.1986). "Alabama's policy against covenants not to compete is a fundamental public policy." Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 507 (Ala.1991). "Section 8-1-1 expresses the public policy of Alabama disfavoring contracts in restraint of trade.... A covenant not to compete that does not fall within the limited exceptions set out by § 8-1-1 is void." Construction Materials, Ltd. v. Kirkpatrick, 631 So.2d 1006, 1009 (Ala.1994). In Construction Materials, Jeffrey Griggs had been employed by Construction Materials for five years, until it entered into an agreement *665 with Skilstaf, an employee-leasing company, whereby Skilstaf would employ all of Construction Materials' employees and lease the employees back to Construction Materials. The lease agreement between Construction Materials and Skilstaf, and the subsequent "agreement not to compete" Skilstaf required Griggs to sign to become its employee, "[made] it clear that Griggs's relationship was with Skilstaf, and not Construction Materials, when Griggs executed the noncompetition agreement." 631 So.2d at 1009. The noncompetition agreement "referred to Skilstaf as the `employer,' Griggs as the `employee,' and Construction Materials as the `third-party beneficiary.'" 631 So.2d at 1008. This Court held that, although Griggs had been an employee of Construction Materials before the employee-leasing agreement entered into between Construction Materials and Skilstaf, he was no longer an employee of Construction Materials at the time he entered into the noncompetition agreement, and, therefore, Construction Materials had no standing to enforce that agreement, despite the fact that the agreement expressly designated Construction Materials as a third-party beneficiary to it. "[I]n light of our public policy against restraints of lawful trade and our correspondingly strict construction of § 8-1-1, this Court... will not recognize a third-party beneficiary's right to enforce a noncompetition agreement unless § 8-1-1 mandates that we do so." 631 So.2d at 1009 (emphasis supplied). Because § 8-1-1(b) provides an exception only with respect to individuals "employed as an agent, servant, or employee," this Court has held that noncompetition agreements relating to professionals, such as physicians, accountants, and veterinarians, fall outside of its scope. Odess v. Taylor, 282 Ala. 389, 211 So.2d 805 (1968); Salisbury v. Semple, 565 So.2d 234 (Ala.1990); Cherry, Bekaert & Holland, supra; and Anniston Urologic Assocs., P.C. v. Kline, 689 So.2d 54 (Ala. 1997). By the same reasoning, § 8-1-1(b) cannot apply to noncompetition agreements involving independent contractors. Premier Indus. Corp. v. Marlow, 292 Ala. 407, 295 So.2d 396 (1974). "One who is not employed" as that term is commonly used, does not fall within the exception. Livingston v. Dobbs, 559 So.2d 569 (Ala.1990).
"`As originally enacted, the predecessor of Section 8-1-1(b) provided an exception only for the purchaser of the good will of a business. See Ala.Code § 6827 (1923). In 1931 Section 6827 was amended to include the employer-employee relationship. See Act of July 31, 1931, No. 546, 1931 Gen. Ala. Acts 647. After the amendment the section provided:
"`"One who sells the good will of a business may agree with the buyer, and one who hires as an agent, servant, or employee may agree with his employer, to refrain from carrying on... a similar business...."
"`Id.

"`The 1940 Code of Alabama revised this section slightly by changing "hires" to "is employed.," See Ala.Code Title 9, § 23 (1940).'"
Wyatt Safety Supply Co. v. Industrial Safety Prods., Inc., 566 So.2d 728, 731 (Ala.1990), overruled on other grounds, Sevier Insurance, supra. Berney argues plausibly that "[b]y deliberately substituting the phrase `is employed as' for the phrase `hires as' the Alabama Legislature foreclosed any argument that the exception was meant to apply to prospective employees, as the Legislature deliberately chose to use the present tense'is employed as.'" (Berney's brief at p. 19.) Because we are dealing with "fundamental public policy," and we are therefore required to employ "strict construction" in interpretating the "agent, servant, or employee" *666 exception contained in § 8-1-1(b), I cannot conclude that the exception would apply to vindicate a noncompetition agreement executed at a time when no employer-employee relationship existed, but rather when the parties were only prospectively employer-employee and their legal relationship as employer-employee did not come into existence until a month later. Accordingly, Pitney cannot sustain its burden of proving that its November 19, 1998, noncompetition agreement with Morris is exempted from being void as having been between Pitney, as employer, and "[o]ne who ... is employed as ... [its] employee." (In this regard it is worth noting that this action is brought by "Pitney Bowes, Inc.," the entity that predated any of the negotiations, transactions, and agreements involved in this case, rather than by "Montgomery Office Equipment, Inc., a Pitney Bowes company," a distinct and separate legal entity.)
Pitney makes an appealing argument in its brief when it asserts that the opposing parties were apparently claiming
"that a person can never sign a non-compete [agreement] with a new employer prior to actually having been hired. This is ludicrous, for the plaintiff could not have been hired without first signing the non-compete agreement. The logistics involved in the Appellee's claim resemble the `chicken and the egg argument,' as to which came first.
"In order for their [sic] to be complete consideration as to each party, the Plaintiff had to agree to sign the non-compete [agreement] as a condition precedent to his receiving employment. If the Plaintiff had signed the non-compete [agreement] after he already had the job, then the issue of consideration would have immediately arisen."
Despite the pragmatic reasonableness of Pitney's argument, we are not at liberty to broaden and expand the phrase "one who is employed as an ... employee may agree with his employer" so as to have it read "one who is not yet, but is prospectively to be, employed as an ... employee may agree with his prospective employer." This would simply not be the "strict construction" to which we are obliged to subject § 8-1-1(b). Alabama has long held that continued employment of an at-will employee, standing alone, furnishes sufficient consideration to support and validate an otherwise valid noncompetition agreement. Daughtry v. Capital Gas Co., 285 Ala. 89, 229 So.2d 480 (1969); Corson v. Universal Door Sys., Inc., 596 So.2d 565 (Ala.1991); and Clark v. Liberty Nat'l Life Ins. Co., 592 So.2d 564 (Ala.1992). If Pitney Bowes and MOE had intended as a part of their transaction to prevent MOE employees from freely competing in the marketplace upon the consummation of the sale, they could have accomplished that pursuant to Sevier Insurance, by having MOE require the execution of noncompetition agreements by its employees, and then transferring and assigning those agreements to Pitney, upon completion of the sale.
Although it may be inconvenient for employers to make sure that the employment relationship has come into existence before obtaining a noncompetition agreement from an employee, that is a matter to be addressed by the Legislature, not this Court. We have exhausted our sphere of authority in construing and interpreting statutes once we have determined what the Legislature has said. Unless the legislation is constitutionally infirm, it is not our province to rewrite it under the guise of interpretation and construction, just to try to make it more workable and practical. A future employee simply does not qualify as "one who is employed as ... an employee."
*667 To the extent that prior decisions by this Court have applied the § 8-1-1(b) exception in situations where the noncompetition or nonsolicitation agreements at issue may have been executed before the actual commencement of the employment relationship (and in Sevier Insurance the employment agreement commences with the statement "WHEREAS, employee is desirous of entering into employment with the company...," 711 So.2d at 997), it can only be remarked that the timing of the commencement of the employment status was not raised by the parties in any of those cases. Section 8-1-1(a) states distinctly and emphatically that every contract restraining trade "otherwise than is provided by this section is to that extent void." Because § 8-1-1(b) does not "otherwise provide" for a valid noncompetition agreement to be entered into between a prospective employee and prospective employer, the agreement before us was void at its inception. Not voidable, but, by explicit legislative declaration, void. A contract declared "void" by statute on account of public policy cannot be made "unvoid," and thereby rendered enforceable, by the parties' later ratification of it or by the retention of consideration. Sauls v. Stone, 286 Ala. 461, 241 So.2d 836 (Ala.1970).