Clark Substations, L.L.C., the plaintiff, appeals from the trial court's October 3, 2001, order, which purported to dissolve a temporary restraining order entered against Larry Ware and Kurt Edwards, the defendants, and which, in effect, denied in part and granted in part the injunctive relief sought by Clark Substations. We affirm.
 I.
Clark Corporation, whose operating assets were purchased by Clark Substations, was engaged in the business of packaging and selling electrical substations. "An electrical substation connects a power plant's electrical generation system to a transmission system called the power grid and then connects the power grid to the distribution network that supplies electricity to residential and industrial entities." Appellant's Brief, at 1.
Ware and Edwards were both employed by Clark Corporation. In connection with that employment, each of them executed a noncompetition agreement, pursuant to which he agreed not to compete with Clark Corporation after the termination of his employment. The noncompetition agreement executed by Ware specifically prohibited its assignment:
 "Successors and Assigns. Except as otherwise expressly provided herein, the provisions hereof shall inure to the benefit of, and be binding upon, the successors and assigns of [Clark Corporation] and [Ware]. [Clark Corporation] and [Ware] may not assign its or his rights hereunder."
(Emphasis added.) The noncompetition agreement executed by Edwards allowed Clark Corporation to assign the agreement only with Edwards's prior written consent to the assignment:
 "SUCCESSORS AND ASSIGNS. This Agreement may not be assigned by operation of law or otherwise by any party except with the prior written consent of the other party. This Agreement and all of the terms, covenants and conditions shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective heirs, legal representatives, successors and assigns."
(Emphasis added.)
In March 2000, Clark Substations purchased Clark Corporation's operating assets, including its goodwill, and assumed the liabilities Clark Corporation had incurred in the ordinary course of business. Subsequently, "Clark Substations operated at the same location with the same employees, products, customers, vendors and, most importantly, the same goodwill" as Clark Corporation. Appellant's Brief, at 7. In fact, both Ware and Edwards went to work for Clark Substations, serving as its president and engineering manager, respectively. *Page 362 
Following the sale of its operating assets, Clark Corporation changed its name to Jager and Sons, Inc. Jager and Sons, Inc., dissolved in December 2000.
Ware resigned as president of Clark Substations in July 2001. Edwards resigned as its engineering manager in August 2001. They then formed Substation Enterprises, Inc., and began to compete with Clark Substations in the substation-packaging business.
 II.
On September 11, 2001, Clark Substations filed in the Shelby Circuit Court a complaint against Ware and Edwards, along with application for a temporary restraining order and a motion for a preliminary injunction. In relevant part, Clark Substations sought to enforce the noncompetition agreements that Ware and Edwards had executed while they were employed by Clark Corporation.
On September 11, 2001, the trial court, without a hearing, issued a temporary restraining order, enjoining Ware and Edwards from engaging in the following conduct:
 "(a) disclosing, revealing, publishing or trans-ferring any confidential information obtained from Clark Substations while employed by it;
 "(b) directly or indirectly engaging in the business of the sale, design and/or production of electrical substation packaging products and services within the territory of the United States of America; and/or
 "(c) directly or indirectly supplying any electrical substation products or providing services to, or otherwise soliciting, attempting to solicit, or accepting business from any customer with whom Clark Substations has done business or solicited to do business."
By that same order, the trial court set the motion for preliminary injunction for hearing on September 20, 2001. Ware and Edwards filed a motion to dissolve the temporary restraining order, and that motion was also set for hearing on September 20. The principal contention in the motion to dissolve was that Clark Substations had no legal right to enforce the noncompetition agreements Ware and Edwards executed while they were employed by Clark Corporation.
The trial court stated at the September 20, 2001, hearing that the only purpose of the hearing was to take testimony on the motion to dissolve the temporary restraining order, which, the trial court stated, "particularly involve[d] alleged covenants not to compete." However, at the conclusion of the hearing, the trial court invited the parties "to submit to [it] a paragraph . . . in the nature of injunctive relief directing that the defendants not use material that does not belong to them, that is, property of Clark Substations." The temporary restraining order was to expire by its terms at midnight on September 20, 2001. However, Ware and Edwards committed to abide by the order through September 24, 2001. Clark Substations does not contend that the order was effective after September 24.
On October 3, 2001, the trial court entered an order, holding that Clark Substations was not entitled to enforce the noncompetition agreements and purporting to dissolve the already expired temporary restraining order. Also, the trial court ordered the following injunctive relief: "To the extent that any [of Clark Substations'] property, whether tangible or intangible, is held by [Ware or Edwards], they are hereby restrained from further use, dissemination or publication of such property interest." The trial court did not enjoin Ware and Edwards from competing with Clark *Page 363 
Substations, relief Clark Substations sought in its motion for a preliminary injunction. From that denial of injunctive relief, Clark Substations appealed, as permitted by Ala.R.App.P. 4(a)(1)(A).
 III.
The dispositive issue is whether Clark Substations is entitled to enforce the noncompetition agreements executed by Ware and Edwards in the course of their employment with Clark Corporation. The trial court, relying upon its interpretation of the specific terms of the agreements, found that Clark Substations was not entitled to enforce the agreements. We reach the same conclusion. Therefore, we must affirm the trial court's order insofar as it, in effect, denied injunctive relief based upon the noncompetition agreements.
 IV.
"In adopting § 8-1-1, [Ala. Code 1975,] the Legislature has declared the public policy of this state against noncompete agreements."Pitney Bowes, Inc. v. Berney Office Solutions, 823 So.2d 659, 662 (Ala. 2001). A noncompetition agreement is void, unless it falls within an exception stated in § 8-1-1(b).
 "In Sevier Insurance Agency, Inc. v Willis Corroon Corp., 711 So.2d 995 (Ala. 1998), this Court held `that a nonsolicitation agreement restrains trade and, therefore, that § 8-1-1 applies to such an agreement and that a person may enforce such an agreement only if it falls within the exceptions stated in § 8-1-1(b).' 711 So.2d at 998. `A person or entity seeking to enforce a contract that restrains the exercise of a lawful trade or business has the burden of showing that it is not void under Ala. Code 1975, § 8-1-1.' Construction Materials, Inc. v. Kirkpatrick Concrete, Inc., 631 So.2d 1006, 1009
(Ala. 1994). Section 8-1-1, Ala. Code 1975, provides, in pertinent part:
 "`(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.
 "`(b). . . [O]ne who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the . . . employer carries on a like business therein.' (Emphasis added [in Pitney Bowes, Inc.])
 "`Section 8-1-1 expresses the public policy of Alabama disfavoring contracts in restraint of trade; such contracts are disfavored "because they tend not only to deprive the public of efficient service but also . . . to impoverish the individual."' Construction Materials, 631 So.2d at 1009 (quoting Robinson v. Computer Servicenters, Inc., 346 So.2d 940, 943 (Ala. 1977)). A covenant not to compete that does not fall within the limited exceptions set out by § 8-1-1(b) is void. Construction Materials, 631 So.2d at 1009. See also Livingston v. Dobbs, 559 So.2d 569 (Ala. 1990), and Odess v. Taylor, 282 Ala. 389, 211 So.2d 805
(1968).
 ". . . The employee-employer exception to the voidness of noncompete agreements does not save a noncompete agreement unless the employee-employer relationship exists at the time the agreement is executed. Construction Materials, supra. Absent the employee-employer relationship when the agreement is executed, the agreement is void. Id."
Pitney Bowes, Inc., 823 So.2d at 661-62.
The noncompetition agreements at issue in this case were agreements *Page 364 
between employees, Ware and Edwards, and their then employer, Clark Corporation. After Clark Substations purchased the operating assets of Clark Corporation, including its goodwill, Ware and Edwards became employees of Clark Substations, but they never executed noncompetition agreements in the course of that subsequent employment. Therefore, in an attempt to prevent Ware and Edwards from competing with it, Clark Substations seeks the benefit of their prior noncompetition agreements with Clark Corporation. Relying upon our holding in Sevier InsuranceAgency, Inc. v. Willis Corroon Corp. of Birmingham, 711 So.2d 995 (Ala. 1998), Clark Substations argues that it, as the successor corporation, is entitled to enforce the agreements entered into between the employees and the predecessor corporation, Clark Corporation. However, Clark Substations' reliance upon Sevier Insurance is misplaced, and its argument has no merit.
In Sevier Insurance, this Court, after discussing the relevant statutes, held that "a successor corporation [can] enforce a nonsolicitation agreement entered into between an employee and a predecessor corporation." Sevier Insurance, 711 So.2d at 1001. That holding must be considered in the context of the reasoning that preceded it.
 "We next consider whether a successor corporation can enforce an employee's nonsolicitation agreements.
 "Taylor and Dean entered into the agreements with the predecessor employer, CCA, and not with Corroon, the successor corporation. The question whether Corroon can enforce the agreements Taylor and Dean made requires us to interpret provisions of State law relating to nonsolicitation agreements. Section 10-2A-145(b)(4), Ala. Code 1975 (which was in effect when CCA merged with Corroon),[1] provided:
 "`[The] surviving . . . corporation shall . . . possess all the rights [and] privileges . . . of each of the merging or consolidating corporations; . . . and all . . . choses in action . . . shall be taken and deemed to be transferred to and vested in [the surviving] corporation without further act or deed. . . .'
 "In Wyatt Safety Supply Co. v. Industrial Safety Products, Inc., 566 So.2d 728 (Ala. 1990), a majority of this Court held that a successor corporation may not enforce an employment agreement made between an employee and the predecessor corporation. In reaching this decision, the Court concluded that § 10-2A-145(b)(4) did not apply to nonsolicitation agreements entered into by predecessor corporations, because of the policy disfavoring restraints on trade expressed in § 8-1-1.
 "We have reexamined the rule of law established by the majority of this Court in Wyatt and, after further consideration of the legislative intent currently expressed in § 10-2B-11.06 (see footnote 1), we overrule the holding in Wyatt and hold that a successor corporation can enforce nonsolicitation agreements that are otherwise valid and enforceable. Cf. First Alabama Bancshares, Inc. v. McGahey, 355 So.2d 681 (Ala. 1977) (recognizing, under somewhat different facts, that a noncompetition agreement can remain valid after a merger and can be enforced by the successor corporation). To hold otherwise would, we believe, ignore the reality that such agreements are often important assets that businesses intend to transfer during a purchase or merger; therefore, we hold that the exception contained in § 8-1-1(b) permits a successor corporation to enforce a nonsoliciation agreement *Page 365 
 entered into between an employee and a predecessor corporation.
"________________
 "[1] Section 10-2A-145(b)(4) was repealed effective January 1, 1995, and was replaced by § 10-2B-11.06, which carries forward the substance of subsection (b)(4) but in an abbreviated form."
Sevier Insurance, 711 So.2d at 1000-01. Stated simply, this Court reasoned that the policy disfavoring restraints on trade expressed in § 8-1-1 was trumped by the legislative intent formerly expressed in § 10-2A-145(b)(4) and currently expressed in § 10-2B-11.06. Therefore, we may not ignore the limited scope of those latter sections.
Former § 10-2A-145 dealt specifically with the effects of a merger
of two or more corporations, and § 10-2A-145(b)(4), quoted in SevierInsurance, gave the surviving corporation the same rights as its predecessor corporations. Similarly, § 10-2B-11.06 provides, in pertinent part, that "[w]hen a merger takes effect . . . [t]he surviving corporation thereupon and thereafter possesses all the rights . . . of a public as well as of a private nature, of every corporation party to themerger." (Emphasis added.) While Sevier Insurance dealt with the effect of a merger, Clark Corporation and Clark Substations did not merge. Instead, Clark Substations purchased the operating assets of Clark Corporation, a transaction outside the scope of § 10-2B-11.06.
The Alabama Business Corporation Act deals specifically with a sale-of-assets transaction. See § 10-2B-12.02, Ala. Code 1975. Section 10-2B-12.02 does not provide that the mere purchase of a corporation's assets, without a valid assignment of specific contract rights, gives the purchaser all the rights of the seller of those assets. Therefore, it does not express any legislative intent inconsistent with the policy disfavoring noncompetition agreements expressed in § 8-1-1. Under these circumstances, this Court must conclude that Clark Substations is not a successor entitled to enforce the noncompetition agreements executed by Ware and Edwards in the course of their employment by Clark Corporation.
Clark Substations argues "that this Court considers the controlling element of the transfer of a covenant not to compete to be whether or not there was a sale of goodwill" and cites First Alabama Bancshares, Inc.v. McGahey, 355 So.2d 681 (Ala. 1977), in support of its argument. However, its argument, based upon that case, is fundamentally flawed, because First Alabama Bancshares, Inc. dealt with the sale-of-goodwill exception in § 8-1-1(b), not with its separate employee-employer exception. Here, we are dealing not with a noncompetition agreement between Clark Substations and Clark Corporation, the parties to the sale of goodwill, but, instead, with noncompetition agreements executed by Ware and Edwards in the course of their employment by Clark Corporation. We cannot ignore this distinction, where we must honor the policy disfavoring noncompetition agreements expressed in § 8-1-1, absent clear legislative intent to the contrary.
Finally, Clark Substations is not entitled to enforce the noncompetition agreements as an assignee of those agreements. Indeed, the agreement executed by Ware specifically prohibited its assignment by Clark Corporation. While the agreement executed by Edwards allowed Clark Corporation to assign the agreement with Edwards's "prior written consent," no evidence was presented indicating that Edwards gave any such consent.
 V.
For the foregoing reasons, we hold that the trial court did not err in failing to *Page 366 
enjoin Ware and Edwards from competing with Clark Substations. Therefore, to that extent, the trial court's order of October 3, 2001 is affirmed.
AFFIRMED.
Houston, Lyons, and Johnstone, JJ., concur.
Moore, C.J., concurs in the result.