LeRoy T. BLALOCK, Plaintiff,

v.

PERFECT SUBSCRIPTION
COMPANY, Defendant.

Civ. A. No. 77–620–H.

United States District Court,
S. D. Alabama, S. D.

Oct. 3, 1978.

Thomas W. Underwood, Jr., Foley, Ala., for plaintiff.

David A. Bagwell, Mobile, Ala., for defendant.

HAND, District Judge.

The plaintiff initiated this lawsuit by a complaint seeking recovery for services he allegedly rendered on behalf of the defendant as a magazine salesman. The plaintiff alleges that he earned commissions totaling $15,704.46 which, after reductions for purchases made by the plaintiff against such commissions, resulted in a debt by the defendant to the plaintiff of $14,500.00.

In answer to the complaint defendant Perfect Subscription Company (Perfect) admits that it contracted with the plaintiff as an independent contractor to sell magazines subscription plans to schools for the defendant. It denies that it is indebted to the plaintiff for services rendered, however.

Included in Perfect's answer is a three count counterclaim, alleging first that the plaintiff violated the anti-competition covenant of the contract; second, that the plaintiff breached the contract by not acting in good faith with respect to defendant Perfect; and third, that the conduct of the plaintiff breached his common law obligations and amounted to tortious conduct.

In response to the counterclaim the plaintiff denied the allegations on each and every count.

The matter was then presented to the Court for consideration on stipulated facts and the Court, having considered the record, the memoranda of law and arguments

propounded by counsel, together with the applicable law, finds as follows:

## FINDINGS OF FACT

1. The plaintiff is a resident citizen of Baldwin County, Alabama. Defendant Perfect is a Delaware corporation whose principal place of business at all material times has been a state other than the State of Alabama.

2. Perfect engages in the business of selling magazines through school magazines drives and similar activities. Such activities are carried out through independent contractors or franchisees operating in various states. The plaintiff was one such franchisee who assigned territory included parts of South Alabama and a two-county portion of Northwest Florida.

3. The relationship between plaintiff and Perfect originated in 1973 with the execution of a written contract. The contractual terms allowed for the extension of the contract for successive one year periods by both parties, upon signature of the franchisee upon a letter sent to him for that purpose. The 1973–74 contract was extended by the parties for both the 1974–75 and 1975–76 school years under the contractual extension provisions.

4. The 1975–76 contract terminated by its terms on June 30, 1976. Perfect's home office mailed an extension notice to the plaintiff for extension of the contract for the 1976–77 school year, but the plaintiff never signed the letter or returned it to the home office. Although this precluded any extension of the express contract, Perfect and the plaintiff continued to transact their business affairs as they had done in previous years under the contract.

5. The contract had three provisions that are relevant to the questions before this Court and this lawsuit. Section 3 of the contract provided that:

> This agreement shall remain in force through June 30, 1974 . . . and shall be renewable for successive one-year periods upon written consent of the parties.

Section 14 of the contract contained the covenant against competition that raised the major dispute in this case:

> Franchisee recognizes that by virtue of his association with corporation, corporation will place its business and customer goodwill in the patronage of corporation's customers and schools in a large measure, under the direct and immediate control of franchisee. Therefore, in recognition of this fact and as consideration for franchise, franchisee agrees that during the term of this agreement and for 120 days thereafter, irrespective of the reason for termination, he will not own, manage, operate, control, participate in, act as an employee, or in any manner own or be connected with any business, individual, partnership, firm, corporation, or other entity which is substantially and directly in competition with any of corporation's school plan or other similar subscription activity in which the corporation is engaged or is about to engage and in any such capacity directly or indirectly solicit in connection with the sale or distribution of any magazines, books, subscriptions, educational materials, goods, wares or merchandise of any nature, any school or other unit which franchisee has called upon or for which franchisee performed services covered by this agreement within two (2) years prior to the date of termination. This covenant shall not be interpreted so as to preclude franchisee from acting for other companies which do not compete with corporation.

The final provision of the contract having relevance to this lawsuit was the choice of law provision:

> This agreement is to be executed in the commonwealth of Pennsylvania and the parties agree that the law of Pennsylvania shall apply.

The Court finds that Pennsylvania is relevant in this case only to the extent that the defendant's primary place of business at the time of the execution of the contract was in Pennsylvania. It is clear from the evidence that the primary place of business is now New Jersey.

6. On May 28, 1977 the plaintiff wrote to Perfect and informed the company that he resigned "effective June 1, 1977." Shortly thereafter the plaintiff accepted a job with Sunland Plans, Inc., one of Perfect's competitors. During the 120 day period after his termination, the plaintiff engaged in acts prohibited by the covenant against competition, *supra*.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this lawsuit and the parties hereto by virtue of Title 28, U.S. C.A., § 1332, there being diversity of citizenship between the parties and the sum in controversy exceeding $10,000.00, exclusive of interest and costs.

2. It is a general rule of law that where parties who have entered into a contract continue their respective performances under the terms of the contract beyond the expiration date of the contract, the parties are deemed to have mutually agreed to a new implied contract encompassing the same terms. A. Corbin, *Contracts*, § 684; W. Williston, *Contracts*, § 90. While there is no Alabama authority directly in point, the Alabama cases recognizing that a contract may be implied in fact from circumstances demonstrating a mutual intent to so contract indicate to this Court that Alabama would follow the majority rule set out above. *See, e. g., Sims v. Etowah County Board of Education*, 337 S.2d 1310 (Ala.1976); *Montgomery Water Works and Sanitary Board v. Norman*, 282 Ala. 41, 208 So.2d 788 (1968); *Broyles v. Brown Engineering Company*, 275 Ala. 35, 151 So.2d 767 (1963). The defendant urges the Court that the general rule set out above, while not having received appellate approval in Alabama, has been accepted in at least one state trial court of general jurisdiction, citing *Duralux Lighting, Inc. v. Randall Woodham*, Civil No. 77–500044–K (Mobile County Circuit Court, April 11, 1977). In view of the foregoing, the Court concludes that the 1973 contract remained in full force and effect during the 1976–77 school year until June 1, 1977, when the

plaintiff terminated the contract by his resignation.

3. A second issue raised by the pleadings is what is the appropriate law to apply in this case. While it is not clear where the contract was originally executed, the instrument itself recites that the law of the State of Pennsylvania is to apply. Since Perfect's home office at the time of the execution of the contract was in Pennsylvania, it is clear that Pennsylvania had some relationship to both the parties and to the contract. Under Alabama law, it is entirely proper for parties to stipulate that their contract will be governed by the laws of such a foreign state. *See Craig v. Bemis Company, Inc.*, 517 F.2d 677, 680 (5th Cir. 1975); Note, *Choice of Law Considerations in Alabama*, 7 Cumb.L.Rev. 89, 95 (1976). Therefore, the Court concludes that the choice of law clause is due to be enforced and that the laws of the State of Pennsylvania govern the construction of this contract.

4. The crucial question in this case is the validity of the covenant against competition contained in the contract. The parties agree that the covenant is valid under Pennsylvania law in spite of the fact that it is between independent contractors rather than between employer and employee. *See Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207 (1976). Accordingly, the Court begins its analysis with the conclusion that the covenant against competition is enforceable against the plaintiff in the absence of some showing that its' enforcement is due to be excused or prohibited.

Section 8–1–1(a) of the *Alabama Code* provides that:

[e]very contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind . . is to that extent void.

The provision is to be broadly construed, the only exceptions created being connected to the sale of a business' goodwill and to the dissolution of a partnership. *Ala.Code* §§ 8–1–1(b) & (c). Since neither of these situations is present here, the Court con-

cludes that the covenant would be void under Alabama law, even though it is between independent contractors. *See C & C Products, Inc. v. Fidelity & Deposit Company,* 512 F.2d 1375 (5th Cir. 1975). The question then, of course, is whether the Court should give effect to the Pennsylvania law and enforce the contract, or find that the Alabama law is controlling on this point and declare the covenant void.

5. There has been no Alabama appellate decision involving factual circumstances such as those in the matter *sub judice.* Under these circumstances, the Court finds it appropriate to look to the teachings of the American Law Institute. Section 187 of the Second Restatement of Conflict of Laws provides, in pertinent part, that:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

\* \* \* \* \* \*

(b) application of the law of the above chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Comment g. to section 188 provides that: The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties. The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law. Application of the chosen law will be refused only (1) to protect a fundamental policy of the state which, under the rule of § 188, would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest in the determination of the particular issue.

To be "fundamental", a policy must in any event be a substantial one . . . . [A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal . . . . .

Section 188 of the 2nd Restatement of Conflicts provides that where the contracting parties have not made an effective choice concerning the applicable law, the Court is to apply the law of the state which has the most significant relationship to the transaction in question and the parties to that transaction, considering the place of contracting, the place of negotiation of the contract, the place of performance, the location and subject matter of the contract, and the domiciles of the parties to the contract.

6. Under this characterization of the law, the Court is convinced that section 8–1–1 of the *Alabama Code* is due to be enforced and that the plaintiff is not to be bound by the anti-competition covenant of the contract. Pennsylvania law is clearly determinative of most provisions of this contract under the terms of the Restatement, but section 187(2)(b) clearly requires this Court to refuse enforcement of the anti-competition covenant since it flies directly in the face of the public policy of Alabama as set out by statute, and since the Court concludes that Alabama law would be applicable but for the contractual choice of Pennsylvania. The Court finds that the state's expression of policy in its statute is a fundamental policy and that the State of Alabama has a materially greater interest in the determination of this issue than the State of Pennsylvania. Accordingly, the Court finds for the plaintiff on the defendant's first counterclaim and, the parties having stipulated on the other claims, finds

for the plaintiff in the sum of $11,951.31 on his claims.