The accounting firm of Cherry, Bekaert Holland, (hereinafter "CB H"), appeals from the trial court's summary judgment in favor of J. Charles Brown in his action for a judgment declaring that paragraph 15.9 of the CB H partnership agreement entered into by Brown after he began work with CB H constituted an unenforceable covenant not to compete under Alabama law. Brown cross-appeals from the trial court's entry of summary judgment in favor of CB H on his claim that CB H had tortiously interfered with his business. We affirm.
In 1979, Brown became a partner in CB H's Mobile, Alabama, office. In 1980, he was made an equity partner in CB H, and he executed CB H's partnership agreement in 1981. Article 15 of the partnership agreement contained the following paragraphs relevant to this appeal:
 "15.8 For a period of three (3) years after the termination of his relationship with the partnership, the withdrawing or expelled partner will neither, for himself or any other accountant, solicit or perform any bookkeeping, auditing, accounting, tax consultant work, or accounting services of any other kind, either on his own account or for any other person, firm, or corporation in any capacity or relationship, within a ten (10) mile radius of the Cherry, Bekaert Holland office in which such withdrawing or expelled partner was last stationed, except that there shall be no geographic restriction on a partner expelled without cause pursuant to Section 15.2 above, nor will he solicit or perform such accounting services for himself or any other accountant, from or for any client of the partnership without prior written consent of the Executive Board. . . .
 "15.9 In the event that a court of competent jurisdiction shall determine that the covenant not to compete contained in Paragraph 15.8 is invalid with respect to a withdrawing or expelled partner, it being agreed that within the State of Alabama the courts have determined that such a covenant is invalid, then, in that event, a withdrawing or expelled partner shall not be subject to the above covenant not to compete but shall be subject to the buy/sell agreement embodied in this paragraph. . . . In either event, said withdrawing or expelled partner shall pay to the partnership, *Page 504 
for the purchase of any client served (as defined in Paragraph 15.8 above) by said partner within a three (3) year period following the termination of his relationship with the partnership, an amount not less than one hundred fifty percent (150%) of the fees charged said client by the partnership during the last twelve (12) month period during which the partnership served said client prior to said client being served by the said partner plus an amount representing the excess, if any, of the fees charged by the said partner for the twelve (12) month period commencing with the time said partner first served said client over the fees charged by the partnership referred to above."
Brown signed the agreement in Mobile and sent it to CB H's main office in Charlotte, North Carolina, to be executed by the managing partner. The agreement then became effective on January 14, 1981, after it was signed by the managing partner. The agreement also specified that the parties agreed that it was made in North Carolina and that its validity and construction were governed by North Carolina law.
In January 1988, Brown withdrew from CB H. Some of the clients Brown served while working for CB H retained him after he left CB H. On March 15, 1989, CB H sued Brown in North Carolina, seeking $259,801.50, an accounting, and specific enforcement of paragraph 15.9 of the partnership agreement. CB H alleged that Brown took 100 CB H clients when he left the partnership, without paying for them. On May 18, 1989, Brown sued in Mobile Circuit Court, alleging tortious interference with his business and seeking a judgment declaring that paragraph 15.9 of the CB H partnership agreement was a covenant not to compete — a restraint of trade — and was void and unenforceable under Alabama Code 1975, § 8-1-1. On August 2, 1989, Brown filed a motion for a summary judgment on his claim that paragraph 15.9 was void under Alabama law. CB H filed a motion to dismiss the Alabama proceeding for lack of subject matter jurisdiction, based on the prior pending suit in North Carolina. On February 21, 1990, the trial court entered a summary judgment in favor of Brown on his claim that paragraph 15.9 was void under Alabama law as a covenant not to compete. The trial court also denied CB H's motion to dismiss for lack of subject matter jurisdiction, but entered a judgment in favor of CB H on Brown's allegation of tortious interference with his business.
CB H appeals that portion of the summary judgment declaring that paragraph 15.9 constitutes a covenant not to compete and denying CB H's motion to dismiss. Brown cross-appeals from the judgment in favor of CB H on his claim of tortious interference with business. CB H raises the following issues for our review: (1) whether the trial court lacked subject matter jurisdiction over a declaratory judgment action filed subsequent to the filing of the North Carolina action at law involving the same parties and the same issues; (2) whether the validity of paragraph 15.9 under Alabama law was a moot question — not properly the subject of declaratory relief; i.e., whether North Carolina law would govern the validity of the provision in the North Carolina proceedings; (3) whether, the requested declaratory relief was furthermore moot on the grounds that, under Alabama choice of law principles, North Carolina law governed the validity of an agreement to pay money that was made in North Carolina and that made the money payable to a North Carolina partnership; and (4) whether an agreement by a withdrawing accountant to purchase any clients of his former partnership that he elects to continue to serve is an unenforceable covenant not to compete under Ala. Code 1975, §8-1-1(a). On his cross-appeal, Brown raises the issue of whether the trial court erred in entering a judgment in favor of CB H on his claim of tortious interference with business; he argues that there was no motion or pleading before the court upon which to base such a ruling.
CB H first argues that the trial court lacked subject matter jurisdiction over this action because of the prior pending action in North Carolina involving the *Page 505 
same parties and the same issues. CB H's argument on this point is unpersuasive. While it is true that CB H filed an action in North Carolina prior to Brown's action in Alabama, the mere fact that there is a prior pending action in another state does not divest the trial court of subject matter jurisdiction. In Galbreath v. Scott, 433 So.2d 454 (Ala. 1983), this Court addressed a similar situation of a prior suit pending in another state. Finding that the prior suit, filed in Florida and involving the same parties and the same issues, did not bar a subsequently filed suit in Alabama, the Court stated:
 " 'The mere pendency of an action in one state has no effect upon the right to bring an action in another. Whichever suit is first carried to judgment then bars the other, but it is only the rendition of judgment which has that effect. Until judgment is rendered, successive suits may be brought on the same cause of action in a dozen different states. While rendition of judgment on a prior judgment from another state as a cause of action does not discharge the prior judgment by merger or otherwise, the satisfaction of either judgment will discharge both.' "
Galbreath, 433 So.2d at 456 (quoting R. LeFlar, AmericanConflicts Law § 75 (3d ed. 1977). In the present case, CB H's prior suit is still pending in North Carolina, as no judgment has been rendered in it. Thus, the prior pending suit in North Carolina has no effect on Brown's right to bring suit in Alabama, and the trial court properly retained jurisdiction over the action.
Having concluded that the trial court did have jurisdiction over Brown's suit, we must now focus on CB H's partnership agreement, specifically paragraph 15.9. Although CB H raises several issues related to paragraph 15.9 for our review, the essential question we must resolve is whether paragraph 15.9 is a covenant not to compete and whether it is enforceable under applicable Alabama law. We begin our analysis with Ala. Code 1975, § 8-1-1, the relevant statute concerning covenants not to compete. Section 8-1-1 provides:
 "(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
 "(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.
 "(c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted."
Subsection (a) provides the general prohibition of covenants not to compete and expressly applies to professionals. Subsections (b) and (c) provide limited exceptions to the general prohibition in subsection (a). However, these exceptions do not apply to professionals. Thompson v. Wiik,Reimer Sweet, 391 So.2d 1016 (Ala. 1980); Odess v. Taylor,282 Ala. 389, 211 So.2d 805 (1968). Because the present case involves a professional, an accountant, the exceptions contained in subsections (b) and (c) do not apply, and we are left with the general prohibition of covenants not to compete.See Mann v. Cherry, Bekaert Holland, 414 So.2d 921 (Ala. 1982); Thompson v. Wiik, Reimer Sweet, 391 So.2d 1016 (Ala. 1980); Gant v. Warr, 286 Ala. 387, 240 So.2d 353 (1970). It is in light of this policy disfavoring covenants not to compete embodied in § 8-1-1 that we must view paragraph 15.9 of the CB H partnership agreement.
CB H stipulates that paragraph 15.8 contains a covenant not to compete, but it maintains that paragraph 15.9 is an alternative *Page 506 
to 15.8 and is merely a "buy/sell" agreement, which, by its terms, becomes effective only upon the determination by a court of competent jurisdiction that 15.8 is void and unenforceable as a covenant not to compete. CB H also recognizes in paragraph 15.9 the Alabama policy disfavoring such covenants. These two paragraphs presumably ensure CB H that it will be able to enforce one of the two provisions against the withdrawing partner in every state, regardless of a particular state's laws concerning covenants not to compete.
While paragraph 15.9 does not explicitly contain a covenant not to compete, the requirements of the paragraph are tantamount to a covenant not to compete and operate in the same manner. Paragraph 15.9 requires that the withdrawing partner purchase any former CB H client he serves within a 3-year period following his withdrawal from the partnership for an amount equal to 150% of the fees charged to the client by CB 
H during the last 12-month period when CB H served the client. The withdrawing partner must also pay to CB H the excess of any fees charged by him to the former CB H client over the fees charged to that client by CB H. Paragraph 15.9 is clearly an attempt by CB H to subvert and circumvent the laws and policies of Alabama regarding covenants not to compete. CB H's attempt to validate this paragraph by admitting that paragraph 15.8 contains the covenant not to compete and recognizing its unenforceability under Alabama law and phrasing 15.9 as a "buy/sell agreement" falls far short. The "purchase" requirements placed on a withdrawing partner by paragraph 15.9 operate as a harsher form of restraint on the practice of accounting than paragraph 15.8. Although paragraph 15.9 does not restrict the practice of accounting on a geographic basis, as in 15.8, it restricts that practice on a much broader monetary basis. The requirements of 15.9 are so harsh and punitive in nature that they virtually operate to prevent the practice of accounting by the withdrawing partner totally. We agree with the trial court's determination that paragraph 15.9 is a covenant not to compete, and, as such, is void and unenforceable under Alabama law. This determination does not, however, end our inquiry into paragraph 15.9. The question now becomes whether to give effect to the parties' choice of North Carolina law to govern this agreement.
CB H argues that Brown's declaratory judgment action raises a moot question because, it says, North Carolina law governs the construction and validity of the partnership agreement and Brown's requested relief is further moot because, it says, Alabama's choice of law principles require the application of North Carolina law to this agreement. We conclude, however, that CB H has misstated the law on this point.
The partnership agreement specifies that the parties agree that North Carolina law will govern the construction and validity of the agreement. Alabama follows the principle of "lex loci contractus," which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction. Macey v. Crum, 249 Ala. 249, 30 So.2d 666
(1947); J.R. Watkins Co. v. Hill, 214 Ala. 507, 108 So. 244
(1926). Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement. Craig v. Bemis Co., 517 F.2d 677 (5th Cir. 1975). Thus, North Carolina law would seem to govern the present agreement, because CB H and Brown have apparently chosen the laws of North Carolina to govern it. However, this principle is qualified by the principles set out in Blalock v. PerfectSubscription Co., 458 F. Supp. 123 (S.D.Ala. 1978), and the cases following it.
In Blalock, although the parties to an agreement, which contained a covenant not to compete, chose Pennsylvania law (which enforces covenants not to compete) to govern the agreement, the United States District Court for the Southern District of Alabama held that where the parties' choice of law would be contrary to the fundamental public policies of the forum state, Alabama, the parties' choice of law *Page 507 
could not be given effect and that the laws of the forum must control the agreement. That case involved a contract between an Alabama resident and a Pennsylvania corporation. TheBlalock court referred to the Restatement Second of Conflict ofLaws, §§ 187 and 188 for guidance. Section 187 provides, in part:
 "(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
 "(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
 "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
 "(b) application of the law of the above chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."
Comment (g) to § 187 states further:
 "Fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation. The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties. The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law. Application of the chosen law will be refused only (1) to protect a fundamental policy of the state which, under the rule of § 188, would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest in the determination of the particular issue."
The comments to § 187 also provide that in order for a policy to be considered fundamental it must be "a substantial one" and "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." TheBlalock court went on to hold that because the covenant not to compete, which would be enforced under Pennsylvania law, "flies directly in the face of the public policy of Alabama as set out by statute," the parties' choice of law could not be given effect, and the law of Alabama, namely § 8-1-1, governed the agreement. See also Hughes Associates, Inc. v. Printed CircuitCorp., 631 F. Supp. 851 (N.D.Ala. 1986).
We are faced with a similar situation here. While parties normally are allowed to choose another state's laws to govern an agreement, where application of that other state's laws would be contrary to Alabama policy, the parties' choice of law will not be given effect and Alabama law will govern the agreement. In this case, because the parties have chosen North Carolina law to govern the agreement and North Carolina law would enforce the covenant not to compete set out in paragraphs 15.8 and 15.9, the parties' choice of law must fall. This Court finds that Alabama's policy against covenants not to compete is a fundamental public policy; that Alabama law would be applicable but for the parties' choice of North Carolina law; and that Alabama has a materially greater interest than North Carolina in the determination of this issue, because CB H is attempting to enforce a covenant not to compete in Alabama and against an Alabama resident. Furthermore, application of North Carolina law, enforcing the covenant not to compete, clearly "flies directly in the face of the public policy of Alabama."Blalock, 458 F. Supp. at 127. Therefore, we hold that the contractual choice of North Carolina *Page 508 
law cannot be given effect and that Alabama law will govern this agreement; therefore, § 8-1-1 is to be enforced. Under that provision, paragraph 15.9 is void and unenforceable and Brown cannot be bound by its terms.
Brown cross-appeals, arguing that the trial court erroneously entered the judgment in favor of CB H dismissing his claim alleging tortious interference with business. We disagree.
Brown alleged in his complaint that CB H, through its attempt to enforce paragraph 15.9 of the partnership agreement, tortiously interfered with his business relations and sought to restrain his practice of accounting. Tortious interference with business requires that the plaintiff prove: "(1) The existence of a contract or relation; (2) defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of defendant's interference." Lowder Realty, Inc. v. Odom, 495 So.2d 23, 25
(Ala. 1986). See also Gross v. Lowder Realty, 494 So.2d 590
(Ala. 1986). After examining the record, we conclude that Brown offered no proof of any intentional interference by CB H with his business relations. CB H merely attempted to enforce the partnership agreement, but did not engage in any activity that would amount to intentional interference. The trial court correctly entered a judgment in favor of CB H on Brown's claim of tortious interference with business.
For the reasons stated in this opinion, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.