975 So.2d 287 (2007)
CHEROKEE INSURANCE COMPANY, INC.
v.
Benny SANCHES and Judy Thompson Walther.
No. 1041763.
Supreme Court of Alabama.
June 1, 2007.
*288 David E. Allred and D. Craig Allred of David E. Allred, P.C., Montgomery, for appellant.
James W. McGlaughn and Michael D. McGlaughn of McGlaughn & McGlaughn, L.L.C., Gadsden, for appellees.
BOLIN, Justice.
This is an appeal of a judgment entered in favor of Benny Sanches and Judy Thompson Walther, the plaintiffs below, on their claims against Cherokee Insurance Company, Inc., for uninsured-motorist ("UM") benefits. We reverse that judgment.

I. Facts and Procedural History

During 2002 Sanches was employed by Pemberton Truck Lines, Inc., as a commercial driver. At all times pertinent to this action, Pemberton, a Tennessee corporation, was headquartered and had its principal place of business in Knoxville. During the course of his employment, Sanches, a resident of Etowah County, Alabama, was assigned to Pemberton's flatbed division in Birmingham.
While Sanches was operating a tractor-trailer rig owned by Pemberton on August 13, 2002, the vehicle left the paved portion of a curved section of highway in Winston County, Alabama, rolled over, and was damaged ("the 2002 accident"). The vehicle, like other rigs owned by Pemberton, was registered and licensed in Tennessee. According to Sanches, he lost control of the vehicle after making an evasive driving maneuver to avoid an oncoming tractor-trailer rig that had entered his lane of travel. The other rig did not strike any part of the vehicle operated by Sanches. The driver of the other rig did not stop after the accident, and the identity of that driver and the whereabouts of the other rig ("the phantom vehicle") are unknown. Sanches was the only known witness to the 2002 accident. On the day of that accident, Sanches received medical treatment at the emergency room of an area hospital for injuries to his back and neck, and he was then released. Sanches did not work or drive again for Pemberton after the 2002 accident.
During 2004 Sanches filed two actions in state court in Alabama related to the 2002 accident. One was a breach-of-contract action filed in the Etowah Circuit Court on January 21, 2004. In that action Sanches and Judy Thompson Walther, who Sanches claims is his common-law wife ("the plaintiffs"), asserted UM claims against Cherokee Insurance Company, Inc., and Alfa Mutual Insurance Company. Pursuant to a liability policy issued by Cherokee to Pemberton ("the policy"), Cherokee insured the vehicle Sanches was operating at the time of the 2002 accident; the limit of coverage for UM benefits under the policy was $60,000. Alfa insured a personal vehicle Sanches owned on the date of the 2002 accident; the limit of coverage for UM benefits under Alfa's policy on that vehicle was $20,000 per person and $40,000 per occurrence. In his breach-of-contract action Sanches sought damages for personal injuries he suffered in the 2002 accident; Walther asserted loss-of-consortium claims against both insurers.
*289 Before filing the action in the Etowah Circuit Court, Sanches had submitted a claim to Cherokee for UM benefits under the policy. The policy included an endorsement entitled "Tennessee Uninsured Motorist Coverage" that applied to covered vehicles licensed or principally garaged in Tennessee. Cherokee denied Sanches's claim based on the following provision in that endorsement concerning phantom vehicles:
"If there is no physical contact with [the insured vehicle], the facts of the `accident' must be proven by clear and convincing evidence. We will only accept corroborating evidence of the claim other than the evidence provided by the occupants in the covered [vehicle] or in the vehicle an `insured' is occupying."
("the corroborative-evidence provision"). Five months after filing their complaint, the plaintiffs amended the complaint to add a bad-faith-failure-to-pay claim arising from Cherokee's prelitigation denial of Sanches's UM claim. The plaintiffs alleged that Cherokee's reliance on the corroborative-evidence provision was not a legitimate, arguable, or debatable reason for Cherokee's denial of Sanches's claim.
The second lawsuit Sanches filed was a worker's compensation action in the Winston Circuit Court in which Pemberton was the defendant. Sanches alleged that he had permanently lost earning capacity as a result of the injuries he suffered in the 2002 accident. On December 14, 2004, Sanches settled his worker's compensation action for $140,000; that payment represented the full and final compensation for his permanent partial disability ("the worker's compensation settlement").[1] Including temporary-total-disability benefits, Sanches received a total of $159,352 in worker's compensation payments related to the 2002 accident.[2]
Sanches also applied for Social Security disability benefits following the 2002 accident ("the Social Security claim"). A final decision on the Social Security claim was rendered in July 2004 when a hearing examiner awarded Sanches Social Security disability benefits of $914 per month effective as of the date of the 2002 accident. That finding was not limited to the injuries that Sanches sustained in the 2002 accident.[3]
Because it was undisputed that Sanches was the only known witness to the 2002 accident and his vehicle had not made contact with the phantom vehicle, Cherokee, on November 29, 2004, filed a motion for a summary judgment on the UM claim *290 based on the corroborative-evidence provision. Approximately one month later Cherokee filed a notice of determination of foreign law (and an accompanying proposed amended answer), stating that issues of Tennessee law applied ("the notice of determination"). Cherokee's filing indicated that a conflict existed between the insurance laws of Alabama and Tennessee concerning the enforceability of the corroborative-evidence provision.[4] Cherokee argued that, because Tennessee was the place of contract for the policy and the law of that state authorized corroborative-evidence provisions, Tennessee law "should control the construction of the insurance policy issued by Cherokee [to Pemberton]" and prevent the plaintiffs from recovering on the UM claim.
As an alternative ground for its summary-judgment motion, Cherokee further argued that the following provision in the policy prohibited recovery on the UM claim:
"[Cherokee] will not pay for any element of `loss' if a person is entitled to receive payment for the same element of `loss' under any workers' compensation law, disability benefits or similar law."
("the benefit-setoff provision"). Cherokee contended that the plaintiffs could not recover because the amounts Sanches had received in the worker's compensation settlement and from the Social Security claim exceeded the $60,000 limit of UM coverage in the policy. According to Cherokee, the benefit-setoff provision prohibited a "double recovery" by Sanches of both the UM benefits under the policy and the payments from those collateral sources.
The trial of the plaintiffs' UM claims was set for January 31, 2005. That day the trial court ordered that Alabama, not Tennessee, law applied; struck the notice of determination; and denied Cherokee's motion for a summary judgment. A bench trial on the UM claims against Cherokee and Alfa was then conducted on February 1-2, 2005.[5]
After considering the sworn testimony of all witnesses and other evidence, the trial court on May 27, 2005, entered a judgment stating that the court "finds in favor of [Sanches] and awards damages in the amount of $60,000," and "finds in favor of [Walther] and awards damages in the amount of $10,000." Both Alfa and Cherokee remained as defendants at the time that judgment was entered. The trial court's order did not express any findings or reference the policy provisions upon which Cherokee had relied in support of its motion for a summary judgment.
Thereafter, Cherokee filed postjudgment motions seeking to set aside the judgment against it on the UM claim based on the corroborative-evidence provision and the benefit-setoff provision; the trial court denied those motions. In July 2005, Alfa paid the plaintiffs $10,000 in a pro tanto settlement of their claim against Alfa; the plaintiffs then dismissed that claim and recorded a satisfaction of the judgment against Alfa only.[6] Cherokee *291 timely appealed, and the question presented is whether the trial court correctly denied Cherokee's postjudgment motions and entered judgment against it on the plaintiffs' UM claim.[7]

II. Standard of Review

The ore tenus standard of review applies with respect to the judgment entered on the UM claim. We have described that standard as follows:
"`"When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error."' . . .
"`"The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses." . . . The rule applies to "disputed issues of fact," whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. . . .
"`" . . . [Further], this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence. . . . "'
". . . However, `that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.' . . . "
Robinson v. Evans, 959 So.2d 634, 637 (Ala.2006). In actions like this where the trial court does not make express findings, we also have stated:
"[T]his Court will assume that the trial judge made those findings necessary to support the judgment. . . . Under the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness and will not be reversed unless `found to be plainly and palpably wrong.' . . . `The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.'"
Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992).

III. Analysis

Cherokee argues that the trial court erred because it applied Alabama law and, in doing so, failed to apply the corroborative-evidence provision. According to Cherokee, the plaintiffs may not recover on their UM claim if that provision is enforced and applied.
Cherokee argues that the place of contract for the policy on the vehicle was Tennessee, and that the trial court, therefore, should have applied the law of that state. Cherokee further posits that Tenn. Code Ann. (1994), § 56-7-1201(e), authorizes corroborative-evidence provisions like the one in the policy. In pertinent part, that statute provides:
"(e) If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, the insured shall have no right to recover under the uninsured motorist provision unless:

*292 "(1)(A) Actual physical contact shall have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured; or
"(B) The existence of such unknown motorist is established by clear and convincing evidence, other than any evidence provided by occupants in the insured's vehicle. . . . "
§ 56-7-1201(e), Tenn.Code Ann. (1994);[8] see also Fruge v. Doe, 952 S.W.2d 408, 412 (Tenn.1997) (holding that the "clear and convincing" evidentiary standard in § 56-7-1201(e)(1)(B) applies to the claimant's duty to prove the existence of a phantom vehicle).
Sanches was the only occupant of the vehicle at the time of the 2002 accident. His testimony was the sole evidence concerning the alleged negligent operation of the phantom vehicle. Further, the evidence at trial indicated that the phantom vehicle made no contact with the vehicle. Because the plaintiffs did not present evidence that meets the evidentiary burden of proof in the corroborative-evidence provision, judgment should have been entered for Cherokee if the law of Tennessee applies. Conversely, if the evidentiary burden of proof applicable in civil actions in Alabama is used, the trial court could have found from Sanches's testimony alone that the negligent operation of the phantom vehicle caused the 2002 accident.
The trial court did not provide any reason for its January 31, 2005, order that struck the notice of determination seeking to apply Tennessee law. However, based on these circumstances and the parties' arguments in their appellate briefs, we assume that the trial court struck the notice of determination for either of two reasons: (1) from a substantive perspective, it determined that the law of Tennessee was not applicable; or (2) in the exercise of its discretion to manage the UM claim it found that Cherokee's notice of determination was untimely.

A. Is the Substantive Law of Tennessee Applicable?

Alabama follows the lex loci contractus rule in determining which state's law applies in a contract dispute. That principle was stated in Stovall v. Universal Construction Co., 893 So.2d 1090 (Ala. 2004):
"In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have specified a particular sovereign's law to govern. Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala.1991). Lacking such a contractual specification, we follow the principle of lex loci contractus, applying the law of the state where the contract was formed. Brown, 582 So.2d at 506. That state's law then governs unless it is contrary to the forum state's fundamental public policy. Id. at 506-07."
893 So.2d at 1102.[9]
Because of the variance in the burdens of proof applicable under Tennessee law or Alabama law, the parties vigorously contest whether the place of contract was *293 Tennessee or Alabama. To support its argument that Tennessee law applies, Cherokee presented evidence indicating that the policy covering the vehicle (as well as Pemberton's other vehicles) was issued and delivered there; that Pemberton paid the premiums for the policy in Tennessee; that the vehicle was registered and licensed in Tennessee; and that the majority of vehicles covered under that policy were garaged in Tennessee. To support their argument that Alabama law applies, the plaintiffs  full-time residents of this State at the time of the 2002 accident  presented evidence indicating that, after working hours, the vehicle was regularly garaged at Sanches's home in Etowah County; that it was assigned to a Pemberton division based in Birmingham; that it was regularly repaired in Alabama; and that it was operated in the ordinary course of Pemberton's business in Alabama at the time of the 2002 accident.
Notwithstanding the undisputed evidence concerning the regular operation, maintenance, and storage of the vehicle in Alabama, Tennessee was the place of contract because the policy was issued and delivered to Pemberton in that state. See Cincinnati Ins. Co. v. Girod, 570 So.2d 595, 597 (Ala.1990) (law of the state where an insurance policy is issued applies when interpreting that policy). Consequently, the substantive law of Tennessee (including § 56-7-1201(e), Tenn.Code Ann. (1994)) applies here and the corroborative-evidence provision is enforceable.
In so holding, we reject two arguments advanced by the plaintiffs concerning substantive principles. First, the plaintiffs contend that the principles of Alabama law encompassed in our UM statute  § 32-7-23, Ala.Code 1975  must apply because the vehicle was garaged and operated in this State. However, the language of our UM statute is plain that it applies to a motor-vehicle-liability policy that is "delivered or issued for delivery [in Alabama] with respect to any motor vehicle registered or principally garaged in this state. . . ." § 32-7-23. Although the vehicle was "principally garaged" in Alabama, it was not licensed in this State, and the policy was issued and delivered in Tennessee.
Second, the plaintiffs note that this Court previously has refused to enforce a corroborative-evidence provision that was asserted as defense to an UM claim concerning a phantom vehicle. We stated in Walker v. GuideOne Specialty Mutual Insurance Co., 834 So.2d 769, 772 (Ala.2002):
"Alabama's uninsured-motorist statute provides protection for `persons . . . who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.' § 32-7-23, Ala.Code 1975. `[A] policy exclusion that "is more restrictive than the uninsured motorist statute . . . is void and unenforceable."' Peachtree Cas. Ins. Co. v. Sharpton, 768 So.2d 368, 370 (Ala.2000) (quoting Watts v. Preferred Risk Mut. Ins. Co., 423 So.2d 171, 175 (Ala.1982)). Unknown phantom drivers, like the one Walker claims caused her accident, are included within the definition of an uninsured motorist. Criterion Ins. Co. v. Anderson, 347 So.2d 384 (Ala.1977)."
(Emphasis supplied.) The Walker Court further stated:
"The undeniable effect of [the insurer's] corroborative-evidence requirement, therefore, is to exclude from coverage those who were involved in an accident as the result of a phantom vehicle, but who cannot present `competent evidence other than the testimony of a person making [a] claim.' Such persons may be `legally entitled' to recover under *294 § 32-7-23, but they are denied uninsured-motorist coverage because they do not meet [the insurer's] contractual burden of proof. [The insurer's] corroborative-evidence requirement contractually raises the burden of proof for Walker and others similarly situated to a burden higher than the evidentiary burden required by law in Alabama. [The insurer's] policy, therefore, excludes from coverage those who otherwise would be able to prove that they are `legally entitled to recover damages' under § 32-7-23. Because [the insurer's] corroborative-evidence requirement is more restrictive than the uninsured-motorist statute, it is void and unenforceable. Peachtree [Cas. Ins. Co. v. Sharpton, 768 So.2d 368 (Ala.2000)]. To hold otherwise would permit [the insurer] to alter Alabama law by contract.
". . . .
"Alabama's statutory provisions relating to uninsured-motorist coverage are silent on the matter of corroborative-evidence requirements or any contractual burden of proof whatsoever . . ., while the uninsured-motorist statutes in some other states expressly provide that proof of `no-contact' or `phantom' unidentified-vehicle accidents must be established by corroborative evidence. . . . While we understand [the insurer's] desire to protect itself against fraudulent claims, we cannot insert into Alabama's uninsured-motorist statute an exception the Legislature has chosen not to include."
834 So.2d at 773-74 (emphasis supplied). Relying on the authority of Walker, the plaintiffs argue that we should not enforce the corroborative-evidence provision here because, they say, it conflicts with the public policy of this State. See 16 Am. Jur.2d Conflict of Laws § 19, p. 42 (1979) (stating that the forum is not necessarily compelled by the Full Faith and Credit Clause to give automatic effect to the statutes of another state and subordinate its own law).
An exception to our lex loci contractus rule does apply where the law of a foreign state "is contrary to [Alabama's] fundamental public policy." Stovall, 893 So.2d at 1102. Moreover, Walker was soundly reasoned, and the corroborative-evidence provision here clearly is "more restrictive than [Alabama's] uninsured-motorist statute." 834 So.2d at 773. However, one of the facts in Walker was that the insurance policy was issued in Alabama. The public policy described in Walker applied to an insurance contract "delivered or issued for delivery in [Alabama]." § 32-7-23. In interpreting § 32-7-23, we do not discern any legislative intent that the public policies encompassed in our UM statute were intended to take precedence over those of sister states. Accordingly, because the policy here was not "delivered or issued for delivery" in Alabama, the principles in Walker and the public-policy exception in Stovall are not extant.[10]
*295 In summary, the trial court erred if it determined, as it must have if it found the notice of determination timely, that Sanches's testimony alone was sufficient proof that the 2002 accident was caused by the negligent operation of the phantom vehicle. Given the applicable substantive law of Tennessee and in light of the corroborative-evidence provision in the policy, that evidence was insufficient to support a judgment for the plaintiffs. Accordingly, the trial court erred if it applied the substantive law of Alabama to the UM claim.

B. Was Notice of Determination Timely?

In an effort to avoid the application of Tennessee law, the plaintiffs further argue that, as a matter of procedure, Cherokee waived its right to rely on the law of Tennessee by not filing its notice of determination in a timely manner. As discussed above, the trial court did not state a reason for striking the notice of determination or electing to apply Alabama law. Below we consider whether, in the exercise of its discretion, the trial court could have applied Alabama law based on Cherokee's alleged tardiness in filing its notice of determination.
Rule 44.1, Ala. R. Civ. P., states that a litigant "who intends to raise an issue concerning the law of another state . . . shall give notice by pleadings or other reasonable written notice." The notice of determination was filed on December 30, 2004  32 days before the scheduled trial date. The record indicates that this filing was the first occasion on which Cherokee specifically asserted in the trial court that Tennessee law should govern the plaintiffs UM claim against it. The plaintiffs observe that the notice of determination was filed after the discovery cutoff and after the deadline for submitting dispositive motions. The plaintiffs contend that, because of the lateness of the filing of the notice of determination, the trial court had the discretion to strike it, which it did on January 31, 2005.
Cherokee counters that the plaintiffs were aware of its intent to rely on the corroborative-evidence provision well before it filed the notice of determination. The record indicates that the corroborative-evidence provision was the subject of the prelitigation correspondence in which Cherokee denied Sanches's UM claim, that it was quoted in Cherokee's May 2004 answer, and that it was raised as a defense in Cherokee's motion for a summary judgment filed in November 2004. Cherokee further argues that the UM endorsement to the policy  entitled "Tennessee Uninsured Motorist Coverage Endorsement"  also was filed in the court records months in advance of the filing of the notice of determination; according to Cherokee, the title of that endorsement emphasized matters pertinent to Tennessee.
Rule 44.1 does not specify a time for filing a notice of foreign law. A party who raises an issue concerning the law of another state must give, "at a minimum, reasonable notice of its intent to raise such an issue." Shelter Mut. Ins. Co. v. Barton, 822 So.2d 1149, 1155 n. 5 (Ala.2001). In Shelter the notice of foreign law was contained in a motion for a summary judgment submitted over one month before trial, and we applied the law of another state. Because a determination of the "reasonableness" of a Rule 44.1 notice necessarily is case specific, there is no brightline standard concerning the timeliness of such a notice. See Semo Aviation, Inc. v. Southeastern Airways Corp., 360 So.2d 936, 942 (Ala.1978)(notice of foreign law given by party in chambers on the day of *296 trial not reasonable when party had months to prepare for trial); and Simmons Mach. Co. v. M & M Brokerage, Inc., 409 So.2d 743, 759 (Ala.1981)(notice untimely when provided almost three years after complaint was filed, one week before trial, and five months after pretrial order and ruling on summary-judgment motion).
Here the notice of determination provided the trial court and the plaintiffs "reasonable written notice" within the meaning of Rule 44.1, Ala. R. Civ. P., of Cherokee's intent to rely on Tennessee law. In holding that Cherokee complied with Rule 44.1, we are influenced by the following factors. Before filing the notice of determination, Cherokee demonstrated its intent to rely on the corroborative-evidence provision in its prelitigation correspondence denying Sanches's claim, in its answer, and in its November 29, 2004, motion for a summary judgment. Moreover, even though the notice of determination was filed after the discovery cutoff, that filing did not alter the facts or preclude any discovery concerning the 2002 accident. Additionally, the UM claims were on a nonjury docket and had been pending for less than one year before Cherokee filed its notice of determination. The filing of a Rule 44.1 notice over one month before a nonjury trial and before the trial court ruled on Cherokee's motion for a summary judgment offered the trial court and the plaintiffs reasonable notice of Cherokee's intent to invoke Tennessee law. Under these circumstances, if the trial court struck the notice of determination on the basis of untimeliness, that determination constituted error because in doing so it exceeded its discretion.
In summary, the corroborative-evidence provision was enforceable under the applicable substantive law of Tennessee, Cherokee provided reasonable notice of its intent to rely on issues concerning the law of that state, and that provision barred recovery for the plaintiffs on their UM claim.[11]

IV. Bad-Faith Claim

Cherokee relied on the corroborative-evidence provision when it denied Sanches's prelitigation claim for UM benefits. Sanches's bad-faith claim was based on Cherokee's failure to pay those benefits. Because the corroborative-evidence provision in the policy is enforceable here and bars recovery on the plaintiffs' UM claim, Sanches's bad-faith claim is due to be dismissed with prejudice. See Federated Mut. Ins. Co. v. Vaughn, 961 So.2d 816 (Ala.2007) (as a matter of law, insurer was entitled to summary judgment on bad-faith claim where it did not breach the contract underlying the tort action).

V. Conclusion

For the reasons stated above, we reverse the judgment against Cherokee on the plaintiffs' UM claim and remand this cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
COBB, C.J., concurs in the result.
*297 COBB, Chief Justice (concurring in the result).
I recognize that the application of the law of Tennessee requires the result reached in this case. However, I do not agree with the rationale of the opinion that the public policy concerns raised by the Alabama Legislature's enactment of § 32-7-23, Ala.Code 1975, with respect to the "corroborative evidence" requirement should be inapplicable to this case. I believe that this State's public-policy concerns should be considered in cases arising out of accidents that occur in this State.
NOTES
[1] The order approving the worker's compensation settlement stipulated that it did not affect the plaintiffs' claims then pending in the Etowah Circuit Court. As a condition of this settlement, the workers' compensation insurer for Pemberton waived any subrogation claim it had against any third party that paid compensation to Sanches as a result of the 2002 accident.
[2] Before the worker's compensation settlement, Sanches was paid temporary-total-disability benefits of $472 a week for 41 weeks. The $159,352 total excludes any medical benefits paid on behalf of Sanches by Pemberton's workers' compensation insurer.
[3] The hearing examiner on the Social Security claim based his decision on all the following considerations related to Sanches's condition: (1) he suffered a back injury in January 2001 while lifting a tarp on his flatbed truck; (2) he incurred back injuries in the 2002 accident; (3) he incurred additional spine injuries and experienced acute pain following an automobile accident in February 2003; (4) he was not employed as a long-haul driver or engaged in any other gainful employment between the date of the 2002 accident and July 2004; (5) he was not physically capable of working as a truck driver; and,(6) although he could perform sedentary work, he did not, because of his age, education, and work experience, have the employment skills to perform that work.
[4] The proposed amended answer Cherokee filed also indicated a conflict between Alabama and Tennessee law in the interpretation of the policy.
[5] Before the trial, the plaintiffs filed a motion to sever their UM claims (nonjury claims) from their bad-faith claim (a jury matter). The trial court granted that motion from the bench at the close of the trial of the UM claims; that trial was conducted with the understanding that, if necessary, a separate adjudication of the bad-faith claim would follow.
[6] Before its settlement with the plaintiffs, Alfa had argued to the trial court that, because Sanches was occupying a vehicle he did not own when the 2002 accident occurred, Cherokee was the primary UM carrier and Alfa was the excess carrier under the terms of its automobile-liability policy for Sanches's personal vehicle.
[7] On February 23, 2007, the trial court entered an order certifying that, pursuant to Rule 54(b), Ala. R. Civ. P., its judgment for the plaintiffs on their UM claim was final. The bad-faith claim against Cherokee remains pending below.
[8] Pursuant to § 56-7-1201(e), an insured claiming UM benefits related to an accident involving a phantom vehicle must also report the accident to the appropriate law-enforcement agency within a reasonable time after its occurrence, and not be negligent in failing to determine the identity of the other vehicle and its owner or operator.
[9] We have not found in the record, nor have we been directed to, any evidence indicating that Cherokee and Pemberton  the parties to the policy  designated that the law of any particular state would control in the event of a dispute concerning interpretation of the policy.
[10] This finding is consistent with our other decisions in UM actions in which, although the motor-vehicle accident occurred in Alabama, we have enforced contractual provisions contained in insurance policies issued in other states. See, e.g., Ailey v. Nationwide Mut. Ins. Co., 570 So.2d 598 (Ala.1990) (law of Tennessee applied to issue whether, on a UM claim by a Tennessee resident under a policy issued in Tennessee, other vehicles involved in a multivehicle accident were "uninsured"); Best v. Auto-Owners Ins. Co., 540 So.2d 1381 (Ala. 1989) (law of South Carolina applied on UM-coverage question under a policy issued there where a resident of that state filed a UM claim in Alabama concerning a vehicle principally garaged in South Carolina); and Cotton v. State Farm Mut. Auto. Ins. Co., 540 So.2d 1387 (Ala.1989)(principles of Tennessee law concerning stacking and construction of policy limits applied to determine the rights of a Tennessee resident for UM benefits where the motor-vehicle policy was issued in that state).
[11] In view of our holding, we need not consider Cherokee's alternative argument that, because Sanches received worker's compensation and Social Security payments in excess of the $60,000 policy limit for UM benefits, the benefit-setoff provision barred his recovery. Additionally, in light of the derivative nature of Walther's claim, there is no need to consider Cherokee's argument regarding Alfa's pro tanto settlement as it applied to the judgment in favor of Walther.